Melvin C. NIELSEN and Peter C. Kostantacos, Plaintiffs,

v.

Daniel B. GREENWOOD, James B. Knoll, Carl Gorychka, Carl F. Wangaard, William E. Dotterweich, Donald K. McKay, William W. Robertson, Gregory J. Ziols, Kidder, Peabody & Co., Piper, Jaffray & Hopwood, Incorporated, Specialty Equipment Companies, Inc., SPE Acquisition, Inc., and General Electric Capital Corporation, Defendants.

No. 91 C 6537.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 13, 1995.

Terrence Buehler, Robert E. Williams, Susman, Saunders & Buehler, Chicago, IL, for plaintiff.

Robert B. Bramnik, Theodore J. Low, Altheimer & Gray, Chicago, IL, for defendant Piper, Jaffray & Hopwood, Inc.

## ORDER

LINDBERG, District Judge.

The court has considered *de novo* the report and recommendation of Magistrate Judge Rebecca R. Pallmeyer of November 21, 1994 that this court's order of August 27, 1993 granting defendant Piper, Jaffray & Hopwood's motion to arbitrate be vacated. The court has also considered the objections of the defendant and response thereto of plaintiff, Peter C. Kostantacos.

The court accepts the report of and adopts the recommendations of Magistrate Judge Pallmeyer.

ORDERED: the motion of plaintiff, Peter C. Kostantacos to vacate the order of this court compelling arbitration of his claims against defendant Piper, Jaffray & Hopwood is granted. A status hearing to reset trial and all pretrial events is set for January 31, 1995 at 9:30 a.m.

---

## REPORT AND RECOMMENDATION

PALLMEYER, United States Magistrate Judge.

Plaintiffs Melvin C. Nielsen and Peter C. Kostantacos filed this security fraud action on behalf of a purported class of wronged investors. The complaint, filed on October 11, 1991, seeks relief against a number of Defendants, including Defendant Piper, Jaffray & Hopwood, Inc. (hereinafter, "PJH"), one of two underwriters of the securities offering at issue. Defendant PJH moved to compel arbitration of Plaintiffs' claims against PJH. In a Report and Recommendation dated February 26, 1993, this court recommended that the District Court grant that motion. On August 27, 1993, District Judge George Lindberg affirmed that recommendation and ordered Plaintiffs to arbitrate their claims.

Plaintiff Kostantacos now moves to vacate that order. Kostantacos argues that recent amendments to the National Association of Securities Dealers (hereinafter, "NASD") Code of Arbitration Procedure are applicable to this case and bar arbitration of class action securities claims, such as this one. The amendments at issue took effect on October 28, 1992, several months after the filing of PJH's motion to compel arbitration but well prior to this court's order. For the reasons set forth below, Kostantacos' motion should be granted.

### FACTUAL BACKGROUND

Plaintiffs Melvin Nielsen and Peter Kostantacos filed this securities fraud class action against several Defendants, including the issuer of $150 million in debentures; a subsidiary of the issuer; officers and directors of the issuer; the lender; and two underwriters, one of whom is the moving party here, Defendant PJH.[1] On January 6, 1992, Defendant PJH filed its motion to compel arbitration of Plaintiffs' claims pursuant to the arbitration provisions that appeared in brokerage service agreements between Plaintiffs and PJH. Specifically, the "Fidu-

---

**1.** A full description of the factual and procedural background appears at *Nielsen v. Greenwood,* 849 F.Supp. 1233 (N.D.Ill.1994) and will not be repeated here.

ciary Cash Account Agreements" signed by Plaintiffs provided:

> We specifically agree and recognize that all controversies which may arise between Piper, Jaffray and Hopwood Incorporated ... and me, concerning any transaction, account or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on, or subsequent to the date hereof, shall be determined by arbitration to the fullest extent provided by law. Such arbitration shall be in accordance with the rules then in effect, of the Arbitration Committee of the New York Stock Exchange or the National Association of Securities Dealers, Inc. as I may elect.... I understand that I am not obligated to arbitrate disputes under the federal securities laws to the extent such claims are held not to be arbitrable as a matter of law.

(Fiduciary Cash Account Agreement, Exs. A and B to Defendant PJH's Motion to Stay Proceedings and to Compel Arbitration, filed January 6, 1992, at ¶ 14.) In addition to the arbitration clause, the agreements specifically address the effect of changes in statutes or regulations that may occur:

> Whenever any statute shall be enacted, or any regulation made under any statute or by any exchange, board or market, which shall be applicable to and affect in any manner or be inconsistent with any of the provisions hereof, the provisions of this agreement so affected shall be deemed modified or superseded, as the case may be, by such statute or regulation and all other provisions of this agreement and the provisions as so modified shall in all respects continue and be in full force and effect.

*Id.* ¶ 9.[2]

On February 26, 1993, this court recommended that PJH's motion to compel arbitration be granted. On August 27, 1993, the District Court adopted that recommendation and entered its order granting PJH's motion.

Plaintiff Kostantacos argues that a recent rule change requires that the court vacate its earlier order. Plaintiff explains that he has now learned that two days before PJH presented its motion, the Securities Industry Conference on Arbitration (hereinafter, "SICA") had adopted a change in the NASD Code of Arbitration Procedure.[3] The Code governs the arbitration of "any dispute, claim or controversy" between members of the NASD and customers, and is "deemed a part of and incorporated by reference in every agreement to arbitrate under the rules of the [NASD]." NASD Manual—Rules of Fair Practice (CCH) ¶¶ 3701, 3742 (1994). As amended, Section 12(d)(3) of Part III of the Code provides:

> No member or associated person shall seek to enforce any agreement to arbitrate against a customer who has initiated in court a putative class action or is a member of a putative or certified class with respect to any claims encompassed by the class action unless and until: (A) the class certification is denied; (B) the class is decertified; (C) the customer is excluded from the class by the court; or (D) the customer elects not to participate in the putative or certified class action or, if applicable, has complied with any conditions for withdrawing from the class prescribed by the court.

*Id.* ¶ 3712(d)(3).

This new rule became effective upon approval by the Securities and Exchange Commission (hereinafter, "SEC") on October 28, 1992.[4] On that date, the SEC issued a Release in which it approved the NASD rule change and stated: "This rule change is effective upon the date of Commission approval for all open arbitrations and for arbitration filings made on or after that date.... Ac-

---

**2.** Curiously, neither party mentions this provision in its brief.

**3.** SICA is comprised of representatives from each self-regulatory organization that administers an arbitration program (two of which are the NYSE and NASD), a representative of the securities industry, and four members of the public. Secu-

rities and Exchange Commission Release No. 34–34344, 59 Fed.Reg. 36453 n. 5 (July 18, 1994).

**4.** The New York Stock Exchange (hereinafter, "NYSE") adopted a similar rule change (Rule 600(d)) which became effective August 26, 1992. The parties direct their arguments to the NASD changes, however.

cordingly, neither member firms nor their associated persons may use an existing arbitration agreement to compel a customer to arbitrate a claim that is encompassed by a class action." (Order Approving Proposed Rule Change Relating to the Exclusion of Class Actions from Arbitration Proceedings, Securities and Exchange Commission Release No. 34–31371, 57 Fed.Reg. 42659 (October 28, 1992).) The Release further stated:

> [T]he . proposed rule change will ensure that class actions and claims of individual class members are not eligible for arbitration at the NASD, *regardless of any previously existing agreement to arbitrate* . . . . Moreover, paragraph (d)(3) clearly prohibits NASD members from enforcing existing arbitration contracts to defeat class certification or participation.

.     .     .     .     .

> As approved, *the rule will exclude all class actions from arbitration at the NASD.*

(*Id.*) (emphasis added).

Also on October 28, 1992, the SEC approved an amendment to Article III, Section 21(f) of the NASD Rules of Fair Practice. Pursuant to that change, all arbitration agreements signed by customers of NASD members are required to contain a statement prohibiting persons from bringing class actions to arbitration and from attempting to enforce an agreement to arbitrate against a class member. In contrast to the language quoted above, new Rule 21(b) specifically provided that these requirements "apply only to new agreements signed by an existing or new customer of a member after October 28, 1993."

### SUMMARY OF ARGUMENTS

Plaintiff Kostantacos contends that the amendments to NASD arbitration rules revive his court case against PJH and require this court to vacate its order compelling arbitration. Plaintiff points out that the October 28, 1992 rule change prohibits a member of the NASD, such as PJH, from enforcing an arbitration agreement against a customer who has initiated a putative class action. Because that rule had been adopted and was in effect before the motion to compel arbitration

was decided, Plaintiff argues, the order compelling arbitration should be vacated. (Plaintiff's Memorandum in Support of Their Motion to Vacate This Court's Order Compelling Peter C. Kostantacos to Arbitrate His Claims and for Class Certification (hereinafter, "Plaintiff's Memorandum"), at 3.)

Defendant PJH contends that the amended NASD rule is inapplicable to this dispute because the effective date of the rule change post-dated the January 6, 1992 filing date for PJH's motion to compel arbitration. (Defendant Piper, Jaffray & Hopwood, Inc.'s Response Memorandum in Opposition to Plaintiff's Motion to Vacate this Court's Order Compelling Peter C. Kostantacos to Arbitrate His Claim (hereinafter, "Defendant's Response"), at 2.) Even if one assumes that the rule change is relevant, PJH urges, this court should nevertheless enforce the arbitration agreement because NASD rules determine only *how* arbitration should proceed, not the question of *whether* claims are arbitrable. (*Id.* at 5.) Citing the strong federal policy in favor of arbitration, Defendant PJH argues that even where the NASD rules are incorporated in the agreement, they may not defeat arbitration. (*Id.* at 6–9.) Defendant also argues that Plaintiff does not have standing to assert a violation of the NASD rules. (*Id.* at 9.) Finally, Defendant contends that the NASD rule change should not have "retroactive" application—that is, should not apply to bar arbitration of Plaintiff Kostantacos' claim, where the motion to compel arbitration was filed prior to the rule change. (*Id.* at 10.)

In his reply, Plaintiff Kostantacos urges that the amendments to NASD Rule 12(d) were intended to apply to all arbitration agreements existing at the time the rule changes became effective, including this agreement. (Plaintiffs' Reply Memorandum in Support of Their Motion to Vacate This Court's Order Compelling Peter C. Kostantacos to Arbitrate His Claims (hereinafter, "Plaintiffs' Reply," at 2.) Indeed, in Plaintiff's view, the NASD rule changes merely *restores* the parties' expectations at the time they signed the agreement, four months before the Supreme Court held in *Rodriguez de Quijas v. Shearson/American Express, Inc.,*

490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) that claims under the Securities Act of 1933 may be subject to arbitration. Thus, whether or not such application is deemed "retroactive," Plaintiff urges, the rules should be applied in this case.

### DISCUSSION

This case presents an issue apparently of first impression: whether the 1992 NASD rule changes are binding with respect to agreements that pre-date the rule changes. Indeed, there appears to be no case law that addresses the new rule at all.

### I. *Are NASD Rules Binding?*

■ Both parties have focused their briefs on the question of the power of NASD rules to control the parties' rights and obligations. NASD rules cannot trump the parties' agreement to arbitrate, PJH urges. In support of this contention, Defendant cites *Schulze & Burch Biscuit Co. v. Tree Top, Inc.*, 642 F.Supp. 1155 (N.D.Ill.1986), *aff'd*, 831 F.2d 709 (7th Cir.1987), in which the court rejected plaintiff's contention that the parties' agreement to arbitrate their contract dispute was vague and unenforceable. Although the agreement itself did not identify the arbitral forum, the location of the arbitration, or the rules governing the arbitration, the court concluded that the U.S. Arbitration Act, 9 U.S.C. § 1, *et seq.* and the parties' course of dealings, filled these gaps. *Id.* at 1156–57. Similarly, Defendant cites *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F.Supp. 1359 (N.D.Ill.1990), for its argument that this court should compel arbitration regardless of whether the NASD itself would adhere to its new rules and refuse to conduct the arbitration. In *Zechman,* the court was faced with a dispute between a trader and the securities firm that employed him. Plaintiff trader had initially sought arbitration pursuant to Rule 600.00 of the Chicago Board of Trade, which requires members of the Exchange to arbitrate their disputes. The Chicago Board of Trade declined to hear the claim, apparently due to a conflict of interest. On defendant's motion, however, the court compelled arbitration before a neutral arbitration panel in order to effectuate the parties' agreement to arbitrate their disputes, in spite of the unavailability of the preferred CBOT forum.

Relying on these cases, Defendant PJH urges that the NASD rules determine only *how* arbitration is to be conducted—not *whether* such arbitration should occur at all. Thus, according to PJH, the parties' agreement to arbitrate is independent of those rules and must be enforced even where the rules render the anticipated arbitral forum unavailable.

Defendant PJH made a similar argument in a case cited by Plaintiff, *Mueske v. Piper, Jaffray & Hopwood, Inc.*, 260 Mont. 207, 859 P.2d 444 (1993). As in this case, the plaintiff in *Mueske* had signed a brokerage services agreement with the defendant, Piper Jaffray & Hopwood, Inc., which contained a provision requiring arbitration of disputes to be conducted in accordance with the arbitration rules of the NYSE or NASD. *Id.* at 209, 859 P.2d at 446. Defendant moved to compel arbitration of plaintiff's state securities fraud and negligence claims, but plaintiff argued that the arbitration agreement was unenforceable because defendant had failed to comply with NASD Rule 21(f)(3), adopted several months before plaintiff signed the agreement in 1989, which requires NASD members to obtain the investor's written statement acknowledging the arbitration agreement and to provide the investor with a copy of that written statement. The Montana Supreme Court agreed. The NYSE and NASD Rules are "controlling law," the court held. Defendant's failure to comply with the disclosure requirements rendered the arbitration clause invalid. *Id.* at 216, 859 P.2d at 450. In reaching this conclusion, the court specifically rejected defendant's suggestion that it "intended to submit disputes to arbitration under the terms of NASD and NYSE rules but did not intend to have the determination of validity of the arbitration agreement made by the same rules." *Id.* at 215, 859 P.2d at 449.

Defendant PJH insists that *Mueske* is "void of any consideration of the issues discussed here" or must be disregarded as "simply wrong." Defendant's Response at 8–9 n.

4.[5] Certainly PJH is correct that *Mueske* does not address the class action amendments to the NASD Code of Arbitration. In numerous other cases, however, courts have assumed, like the *Mueske* court, that provisions of the Code control the issue of whether a particular claim is arbitrable. Two Seventh Circuit decisions are illustrative. In *Paine Webber Inc. v. Farnam*, 870 F.2d 1286 (7th Cir.1989), a brokerage firm brought an action in Illinois state court for monies owed it by a customer. The customer sought arbitration of his own claims that the brokerage had breached duties to him and moved for a stay of the state court proceedings pending arbitration. Before the court had ruled on that motion, the brokerage firm sought a declaratory judgment in federal court that arbitration of the customer's claims was barred by § 15 of the NASD Code. Section 15 provides that "[n]o dispute, claim or controversy shall be eligible for submission to arbitration under this code where six years shall have elapsed from the occurrence or event giving rise to the act or the dispute, claim or controversy." The district court refused to disturb the state court's determination that the action in that court should be stayed, but the Seventh Circuit reversed. The court noted that, under the NASD's interpretation, § 15 of the Code is "an eligibility requirement" rather than a statute of limitations and serves as "an absolute bar" to arbitration of untimely claims. 870 F.2d at 1292.

The Seventh Circuit adhered to that conclusion more recently in *Edward D. Jones & Co. v. Sorrells*, 957 F.2d 509 (7th Cir.1992). In *Jones*, investors had sought arbitration of claims of misrepresentation and securities violations against a broker and brokerage firm. Plaintiffs, the broker and brokerage firm, argued that § 15 of the NASD Code required the court to vacate the arbitration award in favor of plaintiffs, and the court agreed. The *Jones* court cited its "explicit

holding" in *Paine Webber* that § 15 is an eligibility requirement rather than a statute of limitations. 957 F.2d at 513. Significantly, the court noted that its conclusion concerning § 15 was supported by the NASD's own interpretation of that section and by the SEC Release announcing the rule. In reaching its decision on the question of whether the claim was arbitrable—a question for the court, not for the arbitrator—the Seventh Circuit relied on NASD rules regarding the issue.

Nor do the cases cited by Defendant establish that this court is not governed by NASD rules in determining whether the parties are bound to arbitrate their dispute in this case. (See Defendant's Response, at 8.) First, Defendant cites cases in which lower courts compelled arbitration of claims under Rule 10(b)–5 in spite of apparently contrary language in the Securities and Exchange Commission's Rule 15c2–2, 17 C.F.R. § 240.15c2–2. That Rule, adopted by the SEC at a time when the Supreme Court had held that an arbitration agreement was unenforceable with respect to certain securities claims, provided: "It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal securities laws. . . ." In the cases cited by Defendant PJH, the courts conclude that the purpose of the rule was not to render disputes non-arbitrable; rather, its purpose was merely to ensure that customers signing broker-dealer agreements would not be misled as to the enforceability of arbitration clauses and the availability of judicial relief. *See Shotto v. Laub*, 632 F.Supp. 516 (D.Md.1986); *Steinberg v. Illinois Co.*, 635 F.Supp. 615 (N.D.Ill.1986) (citing *Shotto*.) In each of these cases, the court enforced arbitration of Rule 10(b)–5 claims in light of the shift in the

**5.** Indeed, in a recent unreported decision, at least one court has reached the opposite conclusion concerning Rule 21(f). In *Eureka Homestead Society v. Howard, Weil, LaBouisse, Frederichs, Inc.*, No. CIV. A 94–0452 CC, 1994 WL 583274 (E.D.La.1994), plaintiff urged that the court deny a motion to compel arbitration where defendant, the moving party, failed to include the

appropriate disclosure language in the parties' arbitration agreement. The court concluded that "this violation does not give rise to a private cause of action in favor of Eureka," and that defendant's non-compliance with industry rules are issues for the arbitrators' consideration. *Id.* *6.

Supreme Court's position on the arbitration of such claims. None of the cases involves a contract provision which specifically incorporates rules barring arbitration of particular claims.

In addition to the 10(b)–5 cases, Defendant cites several cases that address the default rules of the NASD, NYSE, and AMEX, which require members to submit to arbitration of customer claims at the customer's insistence, even in the absence of a written agreement. (Defendant's Response, at 7.) These cases hold that the arbitration provision of the "AMEX Window," which designates the American Arbitration Association as the forum to hear such claims, may be superseded by a more specific customer agreement selecting a different forum for arbitration.[6] The willingness of the courts in these cases to enforce forum selection provisions over default rules does not demonstrate, as Defendant suggests, that the NASD or NYSE rules are routinely disregarded by courts.

## II. *Does Plaintiff have Standing?*

■ As Defendant PJH acknowledges, the NASD Code of Arbitration as well as the NYSE Arbitration Rules are equivalent to contracts between members and the exchange. (Defendant's Response, at 6.) Thus, Defendant suggests, it may be answerable to the exchange for rules violations, but Plaintiff Kostantacos himself lacks standing to enforce the Code's provisions.

Defendant is correct that the courts have not recognized a private right of action for enforcement of exchange rules. *See Spicer v. Chicago Board of Options Exchange, Inc.,* 977 F.2d 255, 266 (7th Cir.1992) (CBOE rules); *Carrott v. Shearson Hayden Stone, Inc.,* 724 F.2d 821, 823 (9th Cir.1984) (NYSE rules); *Thompson v. Smith Barney, Harris*

*Upham & Co.,* 709 F.2d 1413, 1419 (11th Cir.1983) (NYSE "know your customer" rule and NASD "suitability" rule). Here, however, Plaintiff is not seeking affirmative relief for any violation by Defendant of the NASD rules involved. Instead, Plaintiff seeks merely to invoke NASD rules as a *defense* to Defendant's request for arbitration—much as the brokerages did in *Jones* and *Paine Webber.*

PJH has not established that Kostantacos lacks standing to bring the NASD rules changes to the court's attention.[7]

## III. *Are NASD Rules to be Applied Retroactively?*

■ Even if the NASD Code controls the parties' agreement and Plaintiff Kostantacos has standing to enforce it, PJH urges, the 1992 amendments to the code may not be applied retroactively to preclude arbitration here. In *Kresock v. Bankers Trust Co.,* 21 F.3d 176 (7th Cir.1994), the Seventh Circuit considered a different amendment to the NASD Code of Arbitration and concluded that that amendment should not apply retroactively.[8] In *Kresock,* plaintiff brought an employment discrimination claim against her former employer, an investment firm. Defendant moved to compel, invoking the parties' agreement to arbitrate any controversy required to be arbitrated under the rules of the NASD. At the time plaintiff brought her claim, NASD rules did not require arbitration of employment discrimination suits; nearly a year later, however, the SEC approved a rule change that required that such disputes be arbitrated. In refusing to apply the rule change retroactively, the Seventh Circuit observed that the amendments were more than "mere clarifications" and instead were "structural changes ... that sweep into

---

6. *See Luckie v. Smith Barney, Harris Upham & Co.,* 999 F.2d 509, 514 (11th Cir.1993) (AMEX Window superseded by specific customer agreement); *PaineWebber, Inc. v. Rutherford,* 903 F.2d 106, 109 (2d Cir.1990) (specific customer agreement may supersede AMEX constitution regarding choice of arbitration fora); *Roney & Co. v. Goren,* 875 F.2d 1218 (6th Cir.1989) (enforcing forum selection clause providing for arbitration of claims before NYSE over NASD).

7. Notably, PJH does not challenge Plaintiff's assertion that, as a member of NASD, PJH itself must have been aware of the rules changes at or near the time of filing of its motion to compel arbitration, but did not advise the court of these changes.

8. Although not supportive of his position, Plaintiff himself quite properly brought this case to the court's attention in his reply brief.

the realm of arbitration a whole new class of disputes." *Id.* at 178–79. The court also observed that the amendments did not mention retroactive application and that the relevant conduct took place long before the amendments became effective. The court concluded that it would be unfair to hold the plaintiff accountable for rules that were not in effect at the time the relevant conduct took place. *Id.*

A number of other cases, some of them more recent than the parties' briefs, also discuss retroactivity in the context of the change in NASD rules requiring arbitration of employment discrimination claims. In *Turner v. IDS Fin. Servs., Inc.,* No. 94–1263, 1994 WL 580186 1994 U.S.App. LEXIS 29461 (7th Cir. Oct. 21, 1994) (unpublished order reversing district court order compelling arbitration), the court adhered to *Kresock,* refusing to compel arbitration of an employment dispute which arose more than a year and a half before the effective date of the amendments. The Eleventh Circuit, however, decided the issue differently in *Kidd v. Equitable Life Assur. Soc'y,* 32 F.3d 516 (11th Cir.1994). In *Kidd,* the plaintiff brought an employment discrimination suit nine months before the NASD amendment. In holding that arbitration of the claim was nevertheless required, the court applied the amendment retroactively on the basis that "ample evidence exist[ed] showing that the pre-amendment NASD Code required arbitration of employment disputes." *Id.* at 520.[9] In *Scher v. Equitable Life Assur. Soc'y,* 866 F.Supp. 776 (S.D.N.Y.1994), similarly, the court compelled arbitration where the NASD amendment occurred prior to plaintiff's filing his employment discrimination suit. The court ruled that the plaintiff "must comply with the NASD Code as it existed at the time he commenced his action." *Id.* at 778 (citing *Kidd* ). *Also compare F.N. Wolf & Co. v. Brothers,* 161 Misc.2d 98, 613 N.Y.S.2d 319 (Sup.1994) (refusing to require arbitration of pre-amendment employment dispute) *with F.N. Wolf & Co. v. Bowles,* 160 Misc.2d 752, 610 N.Y.S.2d 757 (Sup.1994) (compelling arbitration of employment dispute without reach-

ing retroactivity issue based upon court's conclusion, contrary to *Farrand,* that the pre-amendment Code required arbitration of such disputes).

This court has found only one other case that addresses the problem of retroactivity of NASD Code amendments. In that case, *Chor v. Piper, Jaffray & Hopwood, Inc.,* 261 Mont. 143, 148, 862 P.2d 26, 29 (1993), the Montana Supreme Court refused to apply an rule change retroactively to arbitration agreements signed in 1988 where the rule expressly stated that it applied only to new agreements signed after September 1989.

*Kresock* is, thus, the only reported decision from this jurisdiction on retroactivity of NASD rule changes. Although the Seventh Circuit declined to enforce the rule change in that case, the language of the opinion supports a different result here. The court acknowledged that plaintiff had agreed to be bound by amendments to the NASD Code but also emphasized that she "never agreed to the retroactive application of such amendments, *particularly when the amendments themselves do not purport to apply retroactively.*" *Kresock,* 21 F.3d at 179 (emphasis supplied).

Here, although the amendments themselves do not expressly mention retroactivity, statements in the SEC Release clearly express retroactive intent. For example, the Release states that the changes apply to all "open arbitrations and arbitration filings made on or after the effective date," and that "neither members nor their associated persons may use an *existing* arbitration agreement to compel a customer to arbitrate a claim that is encompassed by a class action." (Order Approving Proposed Rule Change Relating to the Exclusion of Class Actions from Arbitration Proceedings, Securities and Exchange Commission Release No. 34–31371, 57 Fed.Reg. 42659 (October 28, 1992).) Further, the Release states that the rule change ensures that class actions are not eligible for NASD arbitration, "regardless of any previously existing agreement to arbitrate." *Id.*

**9.** Our own Court of Appeals had held in *Farrand v. Lutheran Brotherhood,* 993 F.2d 1253 (7th Cir. 1993) that, prior to the amendments, the NASD code did *not* require arbitration of employment disputes.

It appears, thus, that the SEC intended the rule changes to cover all existing arbitration agreements as of the October 28, 1992 effective date. As noted previously, in *Jones* the Seventh Circuit relied on language in the SEC Release concerning § 15 of the NASD Code to support the court's conclusion enforcing that provision. *Jones,* 957 F.2d at 513. The *Jones* court's treatment of the NASD's and SEC's interpretation of the Code counsels against disregard of the SEC's intent with respect to the amendment at issue here.

In addition, language in the parties' own agreement supports a conclusion that enforcement of the rule change is appropriate here. As noted earlier, the Fiduciary Cash Account Agreement signed by Kostantacos and PJH expressly provides that, in the event of a new regulation adopted by an exchange, "the provisions of this agreement so affected shall be deemed modified or superseded ... and the provisions as so modified shall in all respects continue and be in full force and effect." (Fiduciary Cash Account Agreement, ¶ 9.) Thus, the parties in this case appear to have specifically considered the possibility presented by the rule change at issue here, and have agreed to be bound by such changes.

Defendant emphasizes the language of amended Section 21 of the Code, which requires NASD members to disclose the exception for class actions in arbitration agreements, but provides specifically that such requirements apply only to agreements signed after October 28, 1993. As Plaintiff points out, however, that language can fairly be interpreted simply to spare NASD members the obligation of withdrawing and re-writing all of the arbitration agreements to which they are parties. (Plaintiff's Reply, at 4.) The language of Section 21(f) of the Code at least suggests that the drafters contemplated immediate application of the new provisions and knew what language to use where they did not intend such application. The absence of any such language in Section 12, coupled with the plain statements contained in the SEC Release that class action claims are not eligible for arbitration "regardless of any previously existing agree-

ment," supports the conclusion that retroactive application of Section 12 in this case is appropriate.

In this case, PJH filed its motion to compel arbitration only a day before SICA approved the rule changes. Those changes became effective on October 28, 1992, and had been in effect for over ten months by the time Judge Lindberg issued his order compelling arbitration. The SEC Release notes that the courts have developed special procedures and expertise for managing class action suits. *Id.* Thus, the rule changes appear to reflect a preference for judicial resolution of class action claims. For all of these reasons, it is recommended that the court enforce NASD Rule changes adopted well prior to the August 27, 1993 order and vacate that order.

### CONCLUSION

This court should grant Plaintiff Kostantacos' motion to vacate the order directing arbitration of his claims against Defendant PJH. Kostantacos' standing to represent a class of claimants depends in part on his ability to proceed in court against Defendant PJH. Thus, if this recommendation is adopted, it will enhance the likelihood that this case may proceed as a class action and may significantly alter the range and scope of discovery. Accordingly, it is recommended that the date for completion of expert discovery be continued pending the District Court's disposition of this motion to vacate and Plaintiffs' renewed motion for class certification.

Date:

Counsel have ten days from the date of service to file objections to this Report and Recommendation with the Honorable George W. Lindberg. *See* FED.R.CIV.P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Egert v. Connecticut General Life Ins. Co.,* 900 F.2d 1032, 1039 (7th Cir.1990).