**David A. WOJCIK, Plaintiff,**

v.

**AETNA LIFE INSURANCE AND ANNUITY COMPANY; Edward F. Bacher, and Edward F. Sommer, Defendants.**

**No. 95 C 1447.**

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 25, 1995.

cedures.

Steven B. Varick, McBride, Baker & Coles, Chicago, IL, for Wojcik.

William Martin Walsh, Sonnenschein, Nath & Rosenthal, Chicago, IL, Thomas R. Kraemer, Charles J. Faruki, Faruki, Gilliam & Ireland, Dayton, OH, for Aetna Life Ins. & Annuity Co.

Jacqueline A. Criswell, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, Barry H. Wolinetz, Eugene R. Butler, David C. Levine, Baker & Hostetler, Columbus, OH, for Bacher & Sommer.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

In a diversity action, David A. Wojcik ("Wojcik") filed suit against Aetna Life Insurance and Annuity Company ("Aetna"), Edward F. Bacher ("Bacher"), an Aetna agent working in Columbus, Ohio, and Edward F. Sommer ("Sommer"), an Aetna regional manager until 1991. Wojcik alleged intentional interference with prospective business advantage (Count II), deceptive business practices (Count IV), and civil conspiracy against all defendants. (Count V). Wojcik alleged breach of contract (Count I), and against Bacher and Sommer, intentional interference with contract against defendant Aetna. (Count III). In the action presently before the Court, Aetna moves for an order to dismiss Wojcik's claims pursuant to Fed. R.Civ.Pro. 12(b)(6) and to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. Sec. 2. For the reasons discussed below, defendant's motion to compel arbitration is granted.

## BACKGROUND

Aetna is an insurance and annuities firm which is a member of the National Association of Securities Dealers ("NASD")[1] and which has a principal place of business in Hartford, Connecticut. David Wojcik, a resident of Downers Grove, Illinois, began working full-time for Aetna as an insurance broker on or about December, 1980. (Compl. ¶ 6). By 1986, Wojcik's success as a broker was evidenced by promotions through six job titles and conferral of Aetna's "Marketing Management Award." (Compl. ¶ 6). On June 1, 1987, upon the suggestion of Aetna sales manager John Gilla, Wojcik executed a new contract with Aetna and became an Aetna Annuity Representative ("agent"). (Compl. ¶ 8). In this capacity Wojcik also achieved success and earned a place in Aetna's "Honors Club" every year since becoming an agent in 1987, and a position on Aetna's published "Top 200" list of agents from 1987 until the list was discontinued in 1990. (Compl. ¶ 10).

In December, 1988, Wojcik alleges that he was approached by Aetna, Sommer and Bacher and asked to assign his business and clients to Bacher and become a Bacher employee. (Compl. ¶ 11). Wojcik declined the offer and chose to remain an independent Aetna agent. Wojcik claims the defendants embarked on a scheme to destroy him in retaliation. (Compl. ¶ 12). Wojcik alleges that the defendants reassigned clients from Wojcik to Bacher, and refused to assign Wojcik new clients or "cases"[2] in contravention of oral promises made to Wojcik as inducement for him to become an Annuity Representative. (Compl. ¶ 7). In November, 1989, Wojcik ceased to be an agent and returned to his former position as an Aetna broker. (Compl. ¶ 15). However, in May, 1993, again upon the advice of Aetna sales manager John Gilla, Wojcik once again became an Aetna

---

1. NASD is a self-regulated organization under § 28(b) of the Securities Exchange Act of 1934 that regulates investment brokers and broker dealers. 15 U.S.C. § 78bb(b). The rules of such organizations have been held to constitute a contract between all the members of the organizations and associated persons. *See Cullen v. Paine, Webber, Jackson & Curtis, Inc.,* 587 F.Supp. 1520, 1523 (N.D.Ga.1984) (rules of New York Stock Exchange constitute agreement between Exchange and plaintiff as well as agreement between Exchange and defendant).

2. "Cases" are institutions from which individual clients may be solicited; Wojcik alleges Aetna orally promised him it would assign several cases to him, including Illini Hospital and a number of billing groups in the Catholic Archdiocese of Chicago as further inducement for him to become an Aetna Annuities Representative. (Compl. ¶ 7).

agent. (Compl. ¶ 15). Wojcik's claims stem from allegedly conspiratorial conduct on behalf of the defendants which began during Wojcik's initial career as an Aetna Annuities Representative. (Compl. ¶¶ 16–33).

To lawfully sell insurance and annuity products for Aetna, Wojcik registered with NASD. On January 4, 1984, Wojcik completed an application for registration with NASD. Aetna's Mot. to Compel at 2. The application, known as a "Form U–4," contained a provision requiring applicants to submit to arbitration those disputes required to be arbitrated under the NASD Code of Arbitration ("the NASD Code"): [3]

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in Question 8.

Aetna's Mot. to Compel (Ex. A, Form U–4 at 4). In response to Question 8, Wojcik registered with NASD.

At the time Wojcik signed the Form U–4 (1984) the NASD Code, part I, section 1, enumerating matters eligible for submission, required arbitration of:

> ... any dispute, claim or controversy arising out of or in connection with the business of any member of the Association, with the exception of disputes involving the insurance business of any member which is also an insurance company: (1) between or among members; (2) between or among members and public customers or others....

To lawfully... (Wojcik Memo. in Opp. to Aetna's Mot. to Compel. at 3). Also, at that time, part II, section 8(a) of the NASD Code, entitled "Required Submission," provided:

> Any dispute, claim or controversy eligible for submission under Part I of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), shall be arbitrated under this Code, at the instance of:
>
> > (1) a member against another member;
> >
> > (2) a member against a person associated with a member or a person associated with a member against a member; and
> >
> > (3) a person associated with a member against a person associated with a member.

Aetna's Mot. to Compel (Ex B, NASD Manual). Wojcik, as a registered representative of NASD member Aetna, is an "associated person." [4]

The Form U–4 signed by Wojcik on January 4, 1984, also contained a compliance clause in which Wojcik agreed to:

> ... abide by, comply with, and adhere to all the provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the states and organizations as they are and may be adopted, changed or amended from time to time ...

Aetna's Mot. to Compel at 2–3; (Ex A, Form U–4). Effective October 1, 1993, NASD amended its rules to specifically bring employment related disputes within the sphere of arbitrable matters. [5] See NASD Manual

---

**3.** The U–4 application is used to register securities dealers with different exchanges and associations, such as the NASD and the New York Stock Exchange.

**4.** The by-laws of the NASD Code define a "person associated with a member" as "every sole proprietor, partner, officer, director or branch manager of any member, or any natural person occupying a similar status or performing similar functions, or any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such a member...." NASD Code By-laws, Art. 1, ¶ 1101(m).

**5.** Part I, section 1 of the amended Code, which defines matters eligible for submission to arbitration, provides for arbitration of:

> any dispute, claim or controversy arising out of or in connection with the business of any member of the Association, *or arising out of the employment or termination of employment of associated person(s) with any member,* with the exception of disputes involving the insurance business of any member which is also an insurance company: (1) between or among members; (2) between or among members and *associated persons* ...

Amended language is highlighted.

(CCH) ¶ 3701 (1993). On March 7, 1995, Wojcik filed suit against defendants Aetna, Bacher and Sommer. On June 13, 1995, Aetna moved to dismiss the suit and compel arbitration.

## ANALYSIS

■ In order to determine whether a claim is arbitrable, the Court must determine: (1) whether there is an agreement to arbitrate; (2) whether the claims fall within the scope of that agreement; and (3) whether there has been a waiver of the right to arbitrate. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24–34, 111 S.Ct. 1647, 1651–56, 114 L.Ed.2d 26 (1991). In this action the parties do not dispute that an agreement to arbitrate was signed by Wojcik, nor do they contend that waiver of the right to arbitrate is an issue. These criteria, therefore, need not be addressed by the Court.

The question before the Court is whether the claims asserted by Wojcik are within the scope of arbitrable matters contemplated by the arbitration agreement. Wojcik contends that his claims are not eligible for arbitration and opposes Aetna's motion to compel on several grounds. Wojcik argues that: (1) the 1993 amendments to the Code, expressly providing for arbitration of employment-related disputes, can only be applied retroactively in direct contravention of Seventh Circuit authority; (2) the compliance clause in paragraph 2 of Wojcik's Form U–4, in which he promises to "abide by, comply with and adhere to all provisions ... constitutions ... and rules of [NASD] as they are and may be ... amended from time to time," does not extend to NASD's Code of Arbitration Procedure; and alternatively (3) should the amendments be held to apply, the dispute can not be arbitrable since: (a) it involves the insurance business of Aetna and therefore triggers a Code exception to arbitration; and (b) there are named defendants who are not eligible parties for arbitration whose presence precludes arbitration of Wojcik's claims against Aetna. We find Wojcik's arguments unpersuasive.

*Standards Governing Arbitrability*

The arbitration agreement in this case is not just the Form U–4, but the U–4 plus an extrinsic document, the NASD Code of Arbitration Procedure, incorporated by reference in the Form U–4. The agreement to arbitrate encompassed in the Form U–4 is governed by the Federal Arbitration Act ("FAA") which provides that an arbitration clause "shall be valid, irrevocable, and enforceable save upon such grounds as exist in law or equity for the revocation of any contract." 9 U.S.C. § 1 *et seq.* (1982). *See Gilmer,* 500 U.S. 20, 111 S.Ct. 1647 (1991); *O'Donnell v. First Investors Corp.,* 872 F.Supp. 1274, 1276 (S.D.N.Y.1995).

■ Recently, the Supreme Court in *First Options of Chicago, Inc. v. Kaplan,* held that "[w]hen deciding whether the parties agreed to arbitrate a certain matter ... courts generally ... should apply ordinary state law principles that govern the formation of contracts." —— U.S. ——, ——, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995). Furthermore, the Supreme Court has recently reiterated in *Mastrobuono v. Shearson Lehman Hutton, Inc.,* that when a court interprets provisions in an agreement covered by the FAA, "due regard must be given to federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." —— U.S. ——, ——, 115 S.Ct. 1212, 1218, 131 L.Ed.2d 76 (1995) (citing *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 476, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989)). Therefore, the Arbitration Act mandates arbitration of this matter if the NASD Code of Arbitration Procedure can reasonably be interpreted under Illinois contract law as applying to Wojcik's claims.

*The 1993 Amendments to the Code are Applicable to Wojcik's Claims*

The Seventh Circuit had previously held that, prior to the October 1, 1993 amendments the NASD Code did not require arbitration of employment disputes.[6] *See Far-*

---

**6.** The circuits are split on whether NASD's pre-amendment arbitration rules encompassed employment disputes. Compare *Williams v. Cigna Financial Advisors, Inc.,* 56 F.3d 656 (5th Cir.

rand v. Lutheran Bhd., 993 F.2d 1253, 1254–55 (7th Cir.1993); Kresock v. Bankers Trust Co., 21 F.3d 176, 178 (7th Cir.1994). Thus, the issue before this Court is whether the October 1, 1993 amendments to the Code, which expressly provide for arbitration of employment-related disputes, are applicable to Wojcik's case. Wojcik contends that they may not be applied for two reasons; because such application would be "retroactive" and in contravention of established Seventh Circuit authority, and because Wojcik's promise to comply with amendments to the Code does not extend to matters concerning arbitration.

The Seventh Circuit addressed a similar, but factually distinguishable situation in Kresock, a case heavily relied upon by Wojcik to support his argument that the amended Code may not be applied in his case. Id. Wojcik contends that application of the amendments in his case would contravene the holding in Kresock. We disagree.

In Kresock, the plaintiff ("Kresock") was terminated by Banker's Trust and filed suit against Banker's Trust for Title VII violations, before the effective date of the Code amendments compelling arbitration of employment disputes. 21 F.3d at 179. In connection with her employment by Banker's Trust, Kresock signed a Form U–4 application. Id. at 177. Banker's Trust moved to compel arbitration pursuant to the arbitration agreement in Kresock's Form U–4 and argued that the court should apply the amendments retroactively. The court held that although Kresock's Form U–4 contained a compliance clause in which she "certainly ... agreed to be bound by amendments to the NASD Code," she nevertheless, "never agreed to the retroactive application of such amendments." Id. The court then held that the October 1, 1993, amendments to NASD Code did not apply retroactively where the "relevant conduct" took place long before the effective date of the amendments:

> ... the SEC's order indicates that [the amendments] are not to be effective until October 1, 1993, four years after Kresock signed the Form U–4, more than two years after Banker's Trust fired her, and nearly a year after Kresock filed this lawsuit. Thus, the relevant conduct took place long before these amendments to the NASD Code of Procedure became effective.

Id.

The critical question is: what point in time, and what "relevant conduct," did the court consider sufficient for the purposes of referencing "retroactivity" (the point at which any attempt to apply a subsequent change would be deemed "retroactive," and not applicable)?[7] Wojcik contends that the court in Kresock refused to apply the 1993 NASD Code amendments because the arbitration agreement (therefore the Form U–4) was entered prior to the amendments. Thus, Wojcik defines "relevant conduct," and the reference point for determining what constitutes retroactive application, as signing the U–4.[8]

---

1995), Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482 (10th Cir.1994), Kidd v. Equitable Life Assurance Soc'y of the United States, 32 F.3d 516, 519 (11th Cir.1994), and Association of Inv. Brokers v. SEC, 676 F.2d 857, 861 (D.C.Cir.1982) (holding generally that the pre-amendment Code required arbitration of employment-related disputes) with Kresock v. Bankers Trust Co., 21 F.3d 176, 178 (7th Cir.1994) and Farrand v. Lutheran Bhd., 993 F.2d 1253, 1254–55 (7th Cir.1993) (holding that the pre-amendment Code did not require arbitration of employment disputes). NASD, however, explained that the amendments were designed to clarify its long-held understanding that employment disputes are arbitrable under section 8 of the Code. 58 Fed.Reg. 39,071 (1993).

7. See Landgraf v. USI Film Products, —— U.S. ——, ——, 114 S.Ct. 1483, 1498, 128 L.Ed.2d 229 (1994) (while statutory retroactivity has long been disfavored, deciding when a statute operates "retroactively" is not a simple or mechanical task; the court must ask whether the new provision attaches new legal consequences to events completed before its enactment).

8. Aetna correctly notes that the Seventh Circuit has not addressed the fact pattern presented in Wojcik's case. Aetna, relying on authority from other circuits that have confronted this fact situation, argues that arbitration should be compelled since the dispute arose after the effective date of the amendments. See Scher v. Equitable Life, 866 F.Supp. 776, 777 (S.D.N.Y.1994) (court compelled arbitration where Form U–4 signed prior to amendments and action giving rise to suit occurred prior to amendments, but claim filed several months after effective date of amendments).

This interpretation, however, does not comport with the court's finding that Kresock agreed to comply with, and abide by amendments to the Code through the compliance provision in the U–4. 21 F.3d at 179. If the date on which the agreement was entered was the court's reference point, as Wojcik would have this Court conclude, then any amendment would naturally succeed the date on which the agreement was entered, and be *per se* "retroactive," and therefore not applicable. The compliance clause, which the court in *Kresock* recognized as valid, would be rendered meaningless. *See Srivastava v. Russell's Barbecue, Inc.,* 168 Ill.App.3d 726, 730, 119 Ill.Dec. 562, 565, 523 N.E.2d 30, 33 (1988) (contracts are to be interpreted to give meaning and effect to each provision). Moreover, the court in *Kresock* appeared to be primarily concerned with the application of amendments to a situation in which a claim has already been filed. *Id.* *See Scher v. Equitable Life,* 866 F.Supp. 776, 777 (S.D.N.Y.1994); *Hall v. MetLife Resources,* 1995 WL 258061, \*1–2, 1995 U.S.Dist. LEXIS 5812, \*3 (S.D.N.Y.1995) (holding generally that a plaintiff must comply with the Code as it exists on the date of filing). The court specifically warned against the evils that would result if courts allowed amendments compelling arbitration to have an effect on suits already filed. 21 F.3d at 179. Judge Bauer correctly pointed out that it would provide incentive for an organization, such as NASD, to amend its rules after commencement of litigation to force one or both parties to do something they never agreed to do. *Id.*

The Supreme Court provided an historical perspective and comprehensive overview of "retroactive" application in *Landgraf v. USI Film Prods.,* —— U.S. ——, —— – ——, 114 S.Ct. 1483, 1498–1502, 128 L.Ed.2d 229 (1994). In this case, the Court cited with approval the long-standing definition of "ret-

roactive" set forth by Justice Story in *Society for Propagation of the Gospel v. Wheeler.* 22 F.Cas. 756 (1814). Justice Story held that a statute which "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective...." *Id.* at 767; *see also Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) ("[a] law is retrospective if it changes the legal consequences of acts completed 'before its effective date' ").

The Court in *Landgraf* also noted that the application of statutes, enacted after the events in dispute, is "unquestionably proper in many situations." *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1487; *see also Republic Nat'l Bank of Miami v. United States,* 506 U.S. 80, —— – ——, 113 S.Ct. 554, 556–557, 121 L.Ed.2d 474 (1992) (Thomas, J., concurring in part and concurring in judgment) (a statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law); *American Steel Foundries v. Tri–City Cent. Trades Council,* 257 U.S. 184, 42 S.Ct. 72, 66 L.Ed. 189 (1921) (if intervening statute affects the propriety of prospective relief, application of the new provision is not retroactive).[9] Further, the Supreme Court recently recognized in *Gilmer,* that by agreeing to arbitrate a party does not forgo substantive rights but submits to their resolution in an arbitral rather than judicial forum. 500 U.S. at 26.[10] Thus, applying the amendment to Wojcik's case does not change the legal consequences of Aetna's allegedly wrongful behavior. Wojcik still has a claim and, if he prevails, will be granted a remedy in an arbitral setting.

■ Since Wojcik filed his claim after the effective date of the amendment, the amend-

---

9. In *American Steel* the Court held that § 20 of the Clayton Act, enacted while the case was pending on appeal, governed the *propriety* of injunctive relief against labor picketing. The case was remanded for application of the statute and the Court observed that "relief by injunction operates in futuro," and plaintiff had no "vested right" in the decree entered by the trial court.

10. *But see F.N. Wolf & Co. v. Brothers,* 161 Misc.2d 98, 101, 613 N.Y.S.2d 319, 321 (1994) (reasoning that the amendment alters only the forum for resolving the dispute, and does not change the parties' substantive rights reduces the arbitration agreement to a mere forum selection clause).

ment is applicable to Wojcik's case without retroactive application.[11] This holding does not contravene *Kresock* since in that case the claim was filed before the amendment.[12] Wojcik did not forgo substantive rights when he initially agreed to arbitrate certain disputes with Aetna, *see Gilmer,* 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, nor does he forgo substantive rights when, pursuant to an agreement to abide by and comply with amendments to the Code, he must submit employment-related disputes to arbitration.[13]

■ This reasoning, however, cannot be employed if the parties did not intend to be bound by amendments to the Code at the time of contracting. *See First Options,* — U.S. at ——, 115 S.Ct. at 1924 (courts should apply ordinary state-law principles when determining if parties agreed to arbitrate a certain matter); *Ancraft Products Company v. Universal Oil Products Company, Inc.,* 100 Ill.App.3d 694, 697, 56 Ill.Dec. 390, 427 N.E.2d 585, 587 (1981) (citing *In re Estate of Klinker,* 80 Ill.App.3d 28, 30, 35 Ill.Dec. 465, 467, 399 N.E.2d 299, 301 (1979) and *Cedar Park Cemetery Association, Inc. v. Village of Calumet Park,* 398 Ill. 324, 335, 75 N.E.2d 874, 880 (1947)) (the primary objective in contract construction is to determine and give effect to the intentions of the parties at the time they entered into the contract); *Omnitrus Merging Corp. v. Illinois Tool Works, Inc.,* 256 Ill.App.3d 31, 33, 195 Ill.

Dec. 701, 704, 628 N.E.2d 1165, 1168 (1993) (citing *Srivastava v. Russell's Barbecue, Inc.,* 168 Ill.App.3d 726, 730, 119 Ill.Dec. 562, 565, 523 N.E.2d 30, 33 (1988) (the primary objective in contract construction is to give effect to the intention of the parties and that intention is to be ascertained from the language of the contract)). Wojcik argues that the compliance clause in paragraph 2 of the Form U–4, in which he agrees to "comply with, and adhere to all the provisions, conditions and covenants of the statutes, constitutions ... and regulations of the states and organizations as they are and may be adopted, changed, or amended from time to time," extends to all NASD rules, *except* those governing arbitration.

To support his argument, Wojcik attempts to distinguish *Kresock* and cases cited by Aetna, by pointing out that in those instances the Form U–4 arbitration provision itself contained compliance language. Wojcik argues that since the Form U–4 at issue in *Kresock* contained not only a separate compliance provision, like that in paragraph 2 of Wojcik's Form U–4, but also contained compliance language in the arbitration provision itself, and since the *Kresock* court refused to compel arbitration, "[a] fortiori, arbitration cannot be compelled under the terms of Wojcik's U–4 which contained the amendment

---

**11.** The Eleventh Circuit in *Kidd v. Equitable Life Assur. Soc'y,* 32 F.3d 516 (11th Cir.1994), held that the NASD Code amendments applied retroactively to an employment discrimination suit brought almost one year before the amendment's effective date. The court rested its' conclusion on the opinion, in contrast to the Seventh Circuit in *Farrand,* that the pre-amendment Code required arbitration of employment-related disputes. *Kidd,* 32 F.3d at 520.

**12.** The court in *Nielsen v. Greenwood,* 873 F.Supp. 138 (N.D.Ill.1995), distinguished *Kresock,* and held that amendments to the NASD Code barring arbitration of class actions may be applied retroactively where the motion to compel arbitration was filed prior to the effective date of the amendment. The court noted that a Securities and Exchange Commission (SEC) release regarding the amendment provided that the rule changes were intended to cover all existing arbitration agreements. *Nielsen,* at 146. The court also noted, in vacating the order directing arbitration, that "the changes ... had been in effect

for over ten months by the time Judge Lindberg issued his order compelling arbitration." *Id.* Thus, the court in this case uses yet another reference point, the date of judicial resolution, for determining the applicability of an amendment.

**13.** This Court is cognizant of the Seventh Circuit's opinion in *Farrand* which deemed the amendments to the NASD Code of arbitration more than "mere clarifications" of NASD's allegedly long-standing position that employment disputes were encompassed by the pre-amendment Code. *Farrand,* 993 F.2d at 1256. The court in *Kresock* affirmed the holding of *Farrand* and stated that the amendments were "structural changes ... that sweep into the realm of arbitration a whole new class of disputes." *Kresock,* 21 F.3d at 178. Whether the amended Code actually changes the pre-amendment Code is not an issue here since Aetna argues that through a compliance provision in Wojcik's agreement, Wojcik agreed to abide by amendments to the Code.

language only in the compliance clause." This argument fails on several grounds.

First, the court in *Kresock* did not refuse to apply the compliance clause. In fact, the court expressly recognized, referencing the compliance clause, that "certainly Kresock agreed to be bound by amendments to the NASD's Code." *Kresock*, at 179. The court noted, however, that such agreement does not contemplate retroactive application of amendments. *Id.* The court never suggests, as Wojcik would have us believe, that Kresock's agreement to abide by amendments to the Code does not extend to amendments regarding arbitration. Nor does the court ever differentiate between the compliance clause and the language of compliance in the arbitration provision.

Further, courts have applied compliance provisions that are physically separate from arbitration provisions in the agreement, to amendments regarding arbitration. *See Nielsen v. Greenwood*, 873 F.Supp. 138 (N.D.Ill.1995). The court in *Nielsen*, considered an agreement which contained separate clauses for arbitration and compliance. *Id.* at 140, 146. In this case, the court noted the compliance agreement,[14] concluded that the "parties ... appear to have specifically considered the possibility" of an arbitration procedural change "and have agreed to be bound by such changes," and held that an amendment to NASD's Code of arbitration was applicable as within the scope of what the parties' intended at the time of contract. *Id.* at 146.

Finally, and most importantly, Wojcik's strained reading of the agreement violates a cardinal rule of contract construction: that a document should be read to give effect to all of its provisions and to render them consistent with each other. *Mastrobuono*, —— U.S. at ——, 115 S.Ct. at 1219 (citing cases); *Glenn H. Johnson Construction Co. v. Board of Education*, 245 Ill.App.3d 18, 25, 185 Ill. Dec. 74, 79, 614 N.E.2d 208, 213 (1st Dist. 1993) (citing *Srivastava*, 168 Ill.App.3d at 730, 119 Ill.Dec. at 565, 523 N.E.2d at 33) (a fundamental principle of contract construction is that contracts are to be interpreted as a whole, giving meaning and effect to each provision). Wojcik disassociates the two provisions and concludes that he "never agreed to arbitrate disputes later required to be arbitrated under the changed rules." Thus, Wojcik reads the agreement as a series of independent clauses, rather than reading the agreement as a consistent whole, as the law requires. *See Srivastava*, 168 Ill.App.3d at 730, 119 Ill.Dec. at 565, 523 N.E.2d at 33.

The Supreme Court refused to read a similar inconsistency into an agreement in *Mastrobuono*. In this case, the Court attempted to harmonize a choice-of-law provision in a securities broker agreement which specified New York law (which does not allow the award of punitive damages in arbitration proceedings), with an arbitration provision in the same agreement which appeared to allow for the award of punitive damages, although not expressly so. In reversing the district court, and the Seventh Circuit court of appeals, which limited the arbitration clause and disallowed a punitive damages award, the Supreme Court recognized that when interpreting provisions in an agreement covered by the FAA,[15] "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." —— U.S. at ——, 115 S.Ct. at 1218. The Court held that the choice-of-law provi-

---

14. The compliance agreement in *Nielsen* does not make any special reference to compliance with amendments to the *arbitration* Code of NASD, in addition to compliance with any and all rule changes in general:

Whenever any statute shall be enacted, or any regulation made under any state or by any exchange, board or market, which shall be applicable to and affect in any manner or be inconsistent with any of the provisions hereof, the provisions of this agreement so affected shall be deemed modified or superseded.... *Nielsen* at 140.

15. The Supreme Court in *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, held "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

sion was not an unequivocal exclusion of punitive damages claims, that the choice-of-law provision was meant to cover substantive principles which New York courts would apply, while the arbitration provision covered arbitration, and that an award of punitive damages in the arbitration proceeding was proper. *Id.* at ——–——, 115 S.Ct. at 1215–1219. The respondent's position, that one clause allowed punitive damages while the other clause did not, was deemed "untenable" by the Court. *Id.* at ——, 115 S.Ct. at 1219.

Wojcik's reading of the Form U–4 agreement, and the two clauses therein is similarly untenable. Wojcik simply does not give effect to the plain language of the contract. *See Omnitrus Merging Corp.*, 256 Ill.App.3d at 33, 195 Ill.Dec. at 704, 628 N.E.2d at 1168. The construction Wojcik advances exempts arbitration rules from the compliance clause without providing evidence from the text of the contract that such rules are to be exempted.[16] Wojcik's interpretation does not give full effect to the compliance clause, which does not expressly or implicitly except any type of rule from coverage, creates an inconsistency in the agreement between paragraphs 2 and 5, and renders paragraph 2, in which Wojcik agrees to abide by and comply with *all* rules as they are and may be amended, meaningless.

Applying basic principles of Illinois contract law, *Cedar Park Cemetery Ass'n v. Calumet Park*, 398 Ill. 324, 335, 75 N.E.2d 874 (1947) (primary goal of contract interpretation is to give effect to the intention of the parties); *Roosevelt University v. Mayfair Construction Co., Inc.*, 28 Ill.App.3d 1045, 1058, 331 N.E.2d 835, 845 (1982) (citing *Martindell v. Lake Shore National Bank*, 15 Ill.2d 272, 154 N.E.2d 683 (1958)) (the intention of the parties will not be determined from isolated provisions of the contract), and giving effect to federal policy favoring arbi-

tration, we hold that Wojcik's agreement in paragraph 2 of the Form U–4, to comply with and abide by all rules as they are and may be amended, encompasses amendments to NASD procedural rules governing arbitration.

*Wojcik's Claims are Arbitrable Under the 1993 Amendments to the Code*

Although the 1993 amendments, requiring arbitration of employment-related disputes, are considered applicable to Wojcik's case, Wojcik contends that his case is, nevertheless, still not within the scope of arbitrable disputes under the NASD Code. Wojcik puts forth two arguments: (1) that his case is exempted because it involves Aetna's "insurance business," and therefore triggers an exception specified in Part I of the Code; and (2) that the presence of other named defendants (Bacher and Sommer) who are not eligible to proceed to arbitration, precludes arbitration of Wojcik's dispute with Aetna. We disagree.

■ Part I of the NASD Code requires arbitration of any dispute that arises out of the employment or termination of associated persons with any member, "with the exception of disputes involving the insurance business of any member which is also an insurance company." Wojcik claims that the exception applies since "Aetna is an insurance company ... and the allegations of the Complaint relate to Aetna's conduct...." However, courts have determined that the exception may not be triggered simply because the dispute involves an insurance company. *See Trumbetta v. Metropolitan Life Ins. Co.*, No. 94–3275, 1994 WL 481152 \*2–3, 1994 U.S.Dist. LEXIS 12503 \*7 (E.D.Pa. Sept. 1, 1994); *Foley v. Presbyterian Minister's Fund*, No. 90–1053, 1992 WL 63269 \*2, 1992 U.S.Dist. LEXIS 3572 \*4 (E.D.Pa. Mar. 19, 1992) (if NASD had intended to foreclose arbitration of disputes between a signatory of Form U–4 and any member which is also an

---

**16.** The Supreme Court in *First Options*, noted that federal law establishes a presumption in favor of arbitration, providing that issues will be deemed arbitrable unless "it is clear that the arbitration clause has not included them." *First Options*, —— U.S. at ——–——, 115 S.Ct. at 1924–1925. The Court explained that the question of scope arises when the parties have a

contract that provides for arbitration of some issues, and as such, the parties have presumably given thought to the scope of arbitration. Hence, the Court continues, "one can understand why the law would insist upon clarity before concluding that the parties did not want to arbitrate a related matter." *Id.*

insurance company, the phrase of exclusion would have been written in more general language). Rather, to successfully trigger the exception, a plaintiff must allege unlawful insurance practices and not simply wrongful conduct directed toward the plaintiff. *See Prudential Ins. Co. v. Shammas*, 865 F.Supp. 429, 432 (W.D.Mich.1993) (exception not applicable since the conduct complained of, employment discrimination and retaliation, had nothing specifically to do with the insurance aspect of the insurance companies' business); *Trumbetta*, at *1, 1994 U.S.Dist. LEXIS 12503 at *2 (arbitration is proper and not exempted where all of the plaintiff's allegations, such as defamation, interference with contractual relations and wrongful discharge, concern actions by the defendant against the plaintiff during his employment).

■ Wojcik's allegations arise from wrongful conduct directed at Wojcik by Aetna and two Aetna employees, not from the insurance aspect of Aetna's business. In fact, Wojcik labeled the allegations in his Complaint, "The Defendants' Scheme to Destroy Wojcik." Counts I and II against Aetna relate directly to wrongful conduct aimed at Wojcik, and include: (Count I) breach of contract, arising out of Wojcik's participation as an Annuity Representative, in which, Wojcik claims Aetna failed to provide certain promised clients and assignments in contravention of their agreement; and (Count II) intentional interference with prospective business advantage, in which, Wojcik claims Aetna interfered with Wojcik's prospective business, in part, by reassigning Wojcik's clients and making defamatory statements about Wojcik to clients.[17] The court in *Trumbetta* faced similar allegations by a plaintiff against MetLife, and concluded that the claims did not constitute a dispute over MetLife's insurance business for the purposes of the part I exception. *See Trumbetta*, at *1, 1994 U.S.Dist. LEXIS 12503 at *3 (court did not trigger insurance business exception where complaint alleged that defendants defamed plaintiff and interfered with plaintiff's clients). Count IV, deceptive busi-

ness practices and Count V conspiracy, arise from the same conduct that gave rise to Count I and II. Thus, as in *Trumbetta*, the thrust of Wojcik's complaint is that defendants harassed and persecuted him such that he lost business. *Id.* at *2–3 n. 3, 1994 U.S. Dist. LEXIS 12503 at *6 n 3. And, as did the court in *Trumbetta*, we conclude that Wojcik's claims do not arise out of a dispute regarding the insurance business of Aetna and as such, do not trigger the exception in part I of the Code.

■ Although Wojcik's claims are within the scope of the arbitration agreement, Wojcik finally argues that the presence of named defendants, Bacher and Sommer, who are not eligible to proceed to arbitration, precludes arbitration of Wojcik's claims against Aetna. This argument is without merit since the Supreme Court in *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, held that, "Under the arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." 460 U.S. 1, 20, 103 S.Ct. 927, 939, 74 L.Ed.2d 765. Thus, Wojcik's claims against Aetna are within the gamut of arbitrable matters contemplated by the parties' agreement.

### CONCLUSION

For the reasons set forth above, Aetna's motion to compel arbitration shall be granted. The Clerk of the Court is directed to dismiss plaintiff's complaint without prejudice subject to the completion of the necessary arbitration of this dispute. The parties are hereby directed to notify this Court within twenty-one (21) days of the completion of the arbitration proceedings in this matter. All proceedings related to count III, which makes allegations solely against Bacher and Sommer, are hereby stayed, pending the completion of the arbitration.

---

17. Count III of Wojcik's complaint, intentional interference with contract, is directed solely against Bacher and Sommer. (Compl. at 13).