**George PITTER, Plaintiff,**

v.

**The PRUDENTIAL LIFE INSURANCE COMPANY OF AMERICA, Defendant.**

**No. CV 94–1144 (RR).**

United States District Court, E.D. New York.

Nov. 20, 1995.

---

Brenner, Chambers, Gant & Getachew, New York City by Allan Laurence Brenner, for Plaintiff.

Epstein Becker & Green, P.C., New York City by Amy J. Beech, for Defendant.

## MEMORANDUM AND ORDER

RAGGI, District Judge:

Plaintiff George Pitter sues his employer, the Prudential Life Insurance Company of America ("Prudential"), for race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to e–17 (1988 & Supp. V 1993), and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 (Supp. V 1993). Prudential moves to stay this action and to compel arbitration of plaintiff's claim pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1994) ("FAA"). Having carefully considered the parties' submissions and oral arguments, the court hereby grants defendant's motion.

### Factual Background

On June 2, 1980, George Pitter began his employment with Prudential as a sales representative in its Marine Park, Brooklyn office. Pitter complains that from his date of hire through 1993, he never received a promotion despite an excellent work history. He asserts that the reason he was passed over was invidious: he is black. Pitter specifically alleges that in March 1993, Prudential filled three Sales Manager positions in Brooklyn

with less qualified white males. He further cites various incidents of harassment over the years reflecting the racial biases of co-workers and supervisors.

Pitter first submitted his claim of racial discrimination by Prudential to the Equal Employment Opportunity Commission ("EEOC") on May 10, 1993. By letter to plaintiff dated August 24, 1993, Prudential's counsel asserted that, pursuant to the rules of the National Association of Securities Dealers ("NASD"), plaintiff was required to submit his claim to arbitration. The accompanying request that plaintiff withdraw his EEOC filing apparently went unanswered.[1] By December 1993, the EEOC had not yet completed an investigation of Pitter's claim. Thus, on December 10, 1993, at the request of plaintiff's counsel, the EEOC issued Pitter a right to sue letter. On March 28, 1994, plaintiff filed his action in this court.

The issue now before the court is not the merits of Pitter's discrimination claim, but rather the forum where, at least in the first instance, it should be addressed. The propriety of an arbitral forum must be considered because Prudential is a member of the NASD, a self-regulatory organization encompassing most of the firms that operate in the over-the-counter securities market. Pitter is registered with the NASD as a sales representative for Prudential, having filed a standard Uniform Application for Securities Industry Registration (form "U–4") on April 14, 1983.[2]

In signing the U–4, Pitter specifically agreed to arbitrate

> any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register
>
> . . . .

Def.'s Notice of Mot.Ex.A. He also agreed to comply with all "rules and regulations" of the organization with which he was registering "as they are and may be adopted, changed or amended from time to time. . . ." *Id.*

At the time Pitter signed his U–4, part I, section 1, of the NASD Code of Arbitration Procedure ("the NASD Code") described those matters eligible for arbitration:

> This Code of Arbitration Procedure is prescribed . . . for the arbitration of any dispute, claim or controversy arising out of or in connection with the business of any member of the Association, with the exception of disputes involving the insurance business of any member which is also an insurance company:
>
> (1) between or among members;
>
> (2) between or among members and public customers or others;
>
> (3) between or among members, registered clearing agencies . . . and participants, pledges or other persons using the facilities of a registered clearing agency.

Part II, section 8, of the NASD Code specified when arbitration would be required:

> Any dispute, claim or controversy eligible for submission under Part I of this Code between or among members and/or associated members, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), shall be arbitrated under this Code, at the instance of:
>
> (1) a member against another member;
>
> (2) a member against a person associated with a member against a member or a person associated with a member against a member; and

---

**1.** Even assuming a contractual obligation to arbitrate, Pitter might not have been obliged to withdraw his EEOC complaint. In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S.Ct. 1647, 1653, 114 L.Ed.2d 26 (1991), the Supreme Court observed that a party "subject to an arbitration agreement will still be free to file a charge with the EEOC, even though the claimant is not able to institute a private judicial action."

**2.** This standard industry form permits an applicant to register with any of a variety of entities and states. Pitter sought to register with the NASD and New York State. On the form, he identified the firm on behalf of which he would act as "Pruco Securities Corporation," which the court understands to be owned by Prudential.

(3) a person associated with a member against a person associated with a member.

Effective October 1, 1993, the NASD Code was amended. Part I, section 1, now provides more specifically for

the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, *or arising out of the employment or termination of employment of associated person(s) with any member....*

(emphasis added). Part II, section 8, now mandates the arbitration of

[a]ny dispute, claim or controversy eligible for submission under Part I of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), *or arising out of the employment or termination of employment of such associated person(s) with such member....*

(emphasis added).[3]

Although the parties agree that, as a registered representative of Prudential, Pitter is a person "associated with a member," as that term is used in the NASD Code, they disagree as to whether it is the Code as amended in 1993 or its earlier version that applies in this case. They further disagree as to whether any version of the Code requires a stay of court proceedings pending arbitration in a case brought to enforce statutory rights pursuant to Title VII or 42 U.S.C. § 1981.

### Discussion

■ The FAA declares that a written agreement to arbitrate in "a contract evidencing a transaction involving commerce ... shall be valid, irrevocable and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has expressly construed these terms to "leave no place for the exercise of discretion by a district court...." *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985). A court must stay the proceedings before it and "direct the parties ... to arbitration on issues as to which an arbitration agreement has been signed." *Id.; accord McMahan Sec. Co. v. Forum Capital Markets,* 35 F.3d 82, 85–86 (2d Cir.1994).

When, as in this case, a federal court is asked to stay judicial proceedings involving federal statutory claims pursuant to the FAA, it must consider three issues:

[F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; [and] third, it must consider whether Congress intended [the asserted statutory] claims to be nonarbitrable.

*Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir.1987) (internal citations omitted); *see also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985).

### I. Scope of Arbitration under the NASD Code

In this case, the existence of an agreement to arbitrate is undisputed. Indeed, in his papers, plaintiff concedes that by signing the U–4 form he agreed to arbitration of disputes between himself and Prudential to the extent provided in NASD rules.[4] Pl.'s Mem. of Law at 3–4.

---

**3.** Further, pursuant to new section 9(a), disputes concerning employment-related contracts, promissory notes, and commissions will be considered by an arbitration panel of securities specialists, while other employment disputes will be resolved by arbitral panels selected from outside the industry.

**4.** Section 1 of the FAA exempts employment contracts from its ambit. 9 U.S.C. § 1. But Pitter does not invoke this exemption to oppose Prudential's motion. Indeed, he could not since the arbitration clause at issue is not in an employment contract but in his securities registration application with the NASD. In a similar context, the Supreme Court has held that the arbitration clause in a U–4 registration application with the New York Stock Exchange does not come within the employment contract exemption of FAA § 1. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. at 25 n. 2, 111 S.Ct. at 1651 n. 2; *accord Williams v. Cigna Fin. Advisors, Inc.,* 56 F.3d 656, 659–60 (5th Cir.1995); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1488 (10th Cir.1994).

■ Pitter and Prudential do differ as to the scope of the arbitration mandated by the NASD Code of Arbitration Procedure. The issue is complicated by the Code's amendment in October 1993. Under the amended version, it is plain that employment disputes between members and registered representatives must be arbitrated. The parameters of mandated arbitration under the pre-amendment Code are less clear.

### A. Applicability of the 1993 Amended Code

■ This court holds that the NASD Code of Arbitration as amended in October 1993, which explicitly requires arbitration of employment disputes, applies to this case filed in April 1994.

The 1993 amendments to the NASD Code deal, after all, only with the forum where employment claims will be heard. They do not alter the substantive rights conferred by Congress on employees. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. at 26, 111 S.Ct. at 1652 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. at 628, 105 S.Ct. at 3354). In *Landgraf v. USI Film Prods.*, — U.S. —, —, 114 S.Ct. 1483, 1502, 128 L.Ed.2d 229 (1994), the Supreme Court stated that "changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity." Thus, it is entirely appropriate to hold Pitter to compliance with non-substantive rules that took effect almost six months before he filed his lawsuit. *Scher v. Equitable Life Assurance Soc'y of the United States*, 866 F.Supp. 776, 778 (S.D.N.Y.1994) (plaintiff must comply with NASD Code as it exists at time suit commenced); *accord Wojcik v. Aetna Life Ins. and Annuity Co.*, 901 F.Supp. 1282, 1288 (N.D.Ill.1995); *Hall v. Metlife Resources*, No. 94 Civ. 0358, 1995 WL 258061, at *4 (S.D.N.Y. May 3, 1995); *Moore v. Interac-*

*ciones Global, Inc.*, No. 94 Civ. 4789, 1995 WL 33650, at *6 (S.D.N.Y. Jan. 27, 1995).[5] Indeed, in registering with the NASD, Pitter specifically agreed in his U–4 form to comply with NASD rules "as they are *and may be adopted, changed, or amended from time to time.*" Def.'s Notice of Mot.Ex.A (emphasis added). Because the 1993 amendments to the NASD Code clearly cover employment disputes, and because the court finds that version of the Code applicable to Pitter's claim in this court, defendant's motion is granted.

### B. Pre–Amendment Code

Even if the 1993 amended Code were inapplicable to this case, the court would nonetheless conclude that the parties' dispute comes within the scope of the pre-amendment Code's arbitration provisions. The reasons for this conclusion require some discussion of relevant case law.

The applicability of the pre–1993 Amendment NASD Code of Arbitration to employment controversies was raised before the Second Circuit in *McMahan Sec. Co. v. Forum Capital Markets*, 35 F.3d at 89. The Circuit declined to address that question, however, since the claims raised in that case extended "far beyond a simple employment dispute." The Seventh and Eleventh Circuits have squarely addressed the issue but arrived at opposite conclusions. *Compare Farrand v. Lutheran Bhd.*, 993 F.2d 1253, 1255 (7th Cir.1993) (holding pre-amendment NASD Code inapplicable to employment disputes) *with Kidd v. Equitable Life Assurance Soc'y of the United States*, 32 F.3d at 519–20 (pre-amendment NASD Code requires arbitration of employment disputes between members and registered representatives). Although the Ninth Circuit has followed the holding in *Farrand, see Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1305 (9th

5. A pair of circuit court cases have staked out opposing positions on the applicability of the amended Code to cases pending on appeal. *Compare Kidd v. Equitable Life Assurance Soc'y*, 32 F.3d 516, 518 (11th Cir.1994) (applying 1993 amended Code to plaintiff whose lawsuit was filed before amendment but whose appeal was still pending on effective date of amendment) *with Kresock v. Bankers Trust Co.*, 21 F.3d 176, 179 (7th Cir.1994) (declining to apply 1993 NASD amendment on appeal, where plaintiff filed lawsuit almost a year before effective date). Since the filing of Pitter's lawsuit differs from the scenarios presented in both *Kidd* and *Kresock,* this court need not discuss the logical underpinnings of their holdings, although other aspects of the *Kidd* decision are discussed *infra.*

Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 61, 133 L.Ed.2d 24 (1995), a number of lower courts and at least one New York state court have questioned its reasoning. *See O'Donnell v. First Investors Corp.,* 872 F.Supp. 1274, 1278 (S.D.N.Y.1995); *Moore v. Interacciones Global, Inc.,* 1995 WL 33650, at \*4; *Hunt v. Aetna Life and Casualty Co.,* No. 94 CV 6195, slip op. at 7, 1994 WL 874347 (W.D.N.Y. Oct. 3, 1994); *'Strappes Group, Inc. v. Siedle,* 1993 WL 443926, at \*4; *F.N. Wolf & Co., Inc. v. Bowles,* 160 Misc.2d 752, 756–57, 610 N.Y.S.2d 757, 759–60 (Sup. Ct.1994).

In both *Farrand* and *Kidd,* the courts attempted to determine the arbitral scope of the pre-amendment Code by parsing the sentence structure of part I, section 1. While each acknowledged the broad prescription therein for arbitration of "any dispute, claim or controversy arising out of or in connection with the business of any member," the *Farrand* court held that this language was limited by "[t]he text following the colon," 993 F.2d at 1254, enumerating disputes between or among specific classes of parties:

> This Code of Arbitration Procedure is prescribed . . . for the arbitration of *any dispute, claim or controversy arising out of or in connection with the business of any member of the Association,* with the exception of disputes involving the insurance business of any member which is also an insurance company:
> (1) *between or among members;*
> (2) *between or among members and public customers, or others; and*
> (3) *between or among members, registered clearing agencies . . . and participants, pledges or other persons using the facilities of a registered clearing agency . . . .*

(emphasis added).

Since employees are not among any of the specifically enumerated classes, *Farrand* considered the possibility that they are included in the last phrase of subpart (2), referring to disputes "between or among members and public customers, *or others.*" *Id.* at 1254 (emphasis added). While acknowledging that "[i]t would not exceed the bounds of reason" to construe "or others" to cover employees, the Seventh Circuit decided to adopt a narrower interpretation. It held

that "or others" applies only to parties similarly situated to "public customers." *Id.* at 1255 ("Language of this kind in a list usually means 'others' *similar to* preceding terms— here, perhaps, clients who for technical reasons cannot properly be called 'public customers.'" (emphasis in original)). Thus, it ruled that arbitration of employment disputes is not mandated by the pre-amendment NASD Code.

In *Kidd,* the Eleventh Circuit questioned *Farrand*'s premise that the enumerated categories of persons in part I, section 1, somehow limit the otherwise broad arbitration requirements of the pre-amendment Code. Citing basic style manuals, *Kidd* concluded that these enumerations are properly understood to relate to the clause immediately preceding the colon, *i.e.,* the clause exempting disputes involving the insurance business of insurance company members. *Kidd* held that section 1 is fairly read to

> require[ ] arbitration for any dispute connected to an NASD member's business, except for disputes involving the insurance business of an NASD member that are (1) between NASD members or (2) between NASD members and public customers or others.

32 F.3d at 519.

This court cannot hope to resolve the grammatical debate between the two circuits. *Kidd* may be correct that proper usage of a colon suggests that "what follows is closely related to the preceding clause." William Strunk, Jr. & E.B. White, *The Elements of Style* 7 (3d ed. 1979) (cited in *Kidd v. Equitable Life Assurance Soc'y,* 32 F.3d at 518). But this court has difficulty understanding what interest the NASD would have in qualifying the insurance business exemption clause with the enumerated categories that follow. Presumably the NASD was exempting *any* dispute involving the insurance business of an insurance company member from compulsory arbitration, not just those involving specific classes of individuals. In short, the insurance business exception may be more akin to a parenthetical within the section rather than an independent clause modified by the language following the colon.

Yet if part I, section 1, is read as restrictively as in *Farrand*, so as to limit the scope of mandated arbitration, a curious internal inconsistency is created within the Code. This is because part II, section 8, specifically identifies "persons associated with members" as among those who can initiate the arbitration proceedings mandated by part I, section 1. However, such associated persons are not among the specific parties set forth in the earlier section. It makes no sense to include "associated persons" within the class of parties who can initiate arbitration proceedings if their disputes do not come within part I. This point is particularly relevant to the issue before this court, since plaintiff does not dispute that he is a "person associated with a member." *See* 15 U.S.C. § 78c(a)(21) (1994) (definitional provision of Securities Exchange Act of 1934) ("[t]he term 'person associated with a member' ... when used with respect to a ... registered securities association means any partner, officer, director, or branch manager of such member ... *or any employee of such member.*") (emphasis added); NASD By–Laws, Art. I, ¶ 1101(q) ("person associated with a member" defined as "every sole proprietor, partner, officer, director, or branch manager of any member ..., or *any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member....*") (emphasis added).

Plainly, then, grammatical analysis alone cannot define the scope of the arbitration mandate in the pre-amendment Code. What the cited excerpts from *Farrand* and *Kidd* reveal is ambiguity as to the pre-amendment Code's applicability to employment disputes. Indeed, plaintiff's counsel conceded as much at oral argument. (Tr. of Oral Argument, Oct. 14, 1994, at 3–4.)

█ Federal law dictates that in suits governed by the FAA, any ambiguities "concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983); *accord Mastrobuono v. Shearson Lehman Hutton, Inc.*, —— U.S. ——, ——, 115 S.Ct. 1212, 1218, 131 L.Ed.2d 76 (1995); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. at 626, 105 S.Ct. at 3353. The Eleventh Circuit relied on this body of law in further support of its holding that employment disputes were within the arbitration mandate of the pre-amendment NASD Code. *See Kidd v. Equitable Life Assurance Soc'y*, 32 F.3d at 519. The Seventh Circuit, in reaching the opposite conclusion, virtually ignored it. *See Farrand v. Lutheran Bhd.*, 993 F.2d at 1255 (noting that Supreme Court holding in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. at 26, 111 S.Ct. at 1652, "did not establish a grand presumption in favor of arbitration," without discussing *Moses H. Cone Memorial Hosp.* or its progeny).

This court is, of course, bound by Supreme Court rulings requiring liberal construction of arbitration agreements. Although the law will not force parties into arbitration when such was clearly not their intent, *see Chevron U.S.A., Inc. v. Consolidated Edison Co.*, 872 F.2d 534, 537–38 (2d Cir.1989), "intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. at 626, 105 S.Ct. at 3353. Where, as here, the arbitration clause is a broad one, such construction is particularly appropriate. *See AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (broad arbitration clause in collective bargaining agreement covered parties' dispute). Indeed, the Second Circuit has held that arbitration clauses should be construed "as broadly as possible," and arbitration ordered "unless it can be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *McMahan Sec. Co. v. Forum Capital Markets*, 35 F.3d at 88 (quoting *S.A. Mineracao da Trindade–Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194–95 (2d Cir. 1984)).

Applying these principles to this case, the court is compelled to order arbitration of plaintiff's claims. Certainly, it cannot be said that the pre-amendment NASD Code cannot be interpreted to cover employment disputes. Indeed, even the Seventh Circuit conceded

that such a construction "would not exceed the bounds of reason." *Farrand v. Lutheran Bhd.*, 993 F.2d at 1255. The broad language in part I, section 1, referring to "any dispute" arising out of a member's business supports arbitration of employee disputes, as does the reference in part II, section 8, to persons associated with members as among those who can initiate arbitration proceedings. Basic contract construction principles make it appropriate to read part II, section 8, and part I, section 1, together to form a consistent whole. *See* Restatement (Second) of Contracts § 202(5) cmt. d (1979) ("where the whole can be read to give significance to each part, that reading is preferred."); *id.* at § 203(a) cmt. b (1979) (where possible, contract to be interpreted as a whole, with no part being superfluous).

This was the approach taken by the New York Court of Appeals in *Singer v. Jefferies & Co., Inc.*, 78 N.Y.2d 76, 571 N.Y.S.2d 680, 575 N.E.2d 98 (1991). At issue in that case was whether the NASD Code required arbitration of a dispute between two persons associated with members for alleged injury to reputation. Plaintiff argued that it did not because, despite the reference in part II, section 8, to associated persons initiating arbitration proceedings, "[t]he only disputes that 'shall be arbitrated,' even under section 8, are those 'eligible for submission under part I of the Code,' and those do not include disputes between associates of members." 78 N.Y.2d at 86, 571 N.Y.S.2d at 685, 575 N.E.2d at 103 (quoting plaintiff's brief). The New York court rejected this argument:

> In our view, a distinction must be drawn between a dispute eligible for arbitration under the section and the parties bound to arbitrate the dispute. In other words, section 1 of part I contains two components. First, it defines the substantive type of controversy which is within the scope of arbitration. Second, it defines the class of persons who may seek or be required to arbitrate such a controversy. Section 8 *extends* this class to include persons associated with a member who have an eligible dispute with other such associates.

78 N.Y.2d at 86, 571 N.Y.S.2d at 685–86, 575 N.E.2d at 103–04 (emphasis added); *accord*

*F.N. Wolf & Co., Inc. v. Bowles*, 160 Misc.2d at 757, 610 N.Y.S.2d at 760 (citing *Singer* in holding that employment disputes are subject to NASD arbitration).

Further supporting the inclusion of employment disputes within the scope of mandated arbitration under the Code is the NASD's own interpretation of its rules. *See, e.g., Fogel v. Chestnutt*, 533 F.2d 731, 753 (2d Cir.1975) ("an exchange has a substantial degree of power to interpret its own rules"), *cert. denied*, 429 U.S. 824, 97 S.Ct. 77, 50 L.Ed.2d 86 (1976); *Castellano v. Prudential–Bache Sec., Inc.*, No. 90 Civ. 1287, 1990 WL 87575, at *2 (S.D.N.Y. June 19, 1990) ("a Court should permit national securities exchanges to construe and apply their own rules."). In proposing the 1993 amendments, the NASD stated that it was simply endeavoring to clarify what had always been the case: employment disputes involving members and persons associated with them are arbitrable under the Code. *See* Order Approving Proposed Rule Change Relating to the Scope of the NASD Arbitration Code of Procedure, 58 Fed.Reg. 45,932 (1993). Although the Seventh Circuit was skeptical of this assertion, viewing it as belated, *see Farrand v. Lutheran Bhd.*, 993 F.2d at 1255–56 (rejecting petition for rehearing), the statement is, in fact, consistent with a 1987 Securities and Exchange Commission ("SEC") release reporting the views of NASD Governors.

Of concern to the NASD in 1987 was the fact that some member firms were requiring registered representatives to sign employment agreements waiving their arbitration rights under the NASD Code. The NASD thought the widespread adoption of such provisions "would have the effect of denying registered representatives access to the NASD's arbitrations facilities *in case of an employment dispute between them and a member firm,* and forcing them to begin more costly and time-consuming litigation in the courts." Proposed Rule Change by National Association of Securities Dealers Relating to Amendments to Code of Arbitration Procedure, 52 Fed.Reg. 9232 (1987) (emphasis added). This statement, taken together with the NASD's concurrent proposal to

amend its Code to prohibit members from requiring such waivers, *id.*, demonstrates that the NASD viewed its Code of Arbitration as applying to employment disputes and was concerned that employee rights to arbitration not be infringed by member firms. That the NASD took this position outside the context of litigation focusing on the arbitrability of employment disputes under the Code, and long before the decisions in *Farrand* or *Kidd*, refutes any suggestion that the NASD's position in 1993 was self-serving. *See also Association of Inv. Brokers v. Securities and Exch. Comm'n*, 676 F.2d 857, 861 (D.C.Cir.1982) (Ruth Bader Ginsberg, J.) ("NYSE and NASD rules mandate arbitration of employer-employee disputes, and did so, to the same extent as they do now, before the development of a uniform form under SEC auspices") (dicta).[6]

Thus, whether the court applies the 1993 amendments to the NASD Code of Arbitration or the pre-amendment Code, it holds that the scope of mandated arbitration includes employment disputes between member firms and persons associated with them.

## II. The Statutory Nature of Plaintiff's Claims

■ At oral argument, plaintiff's counsel suggested that the nature of Pitter's claims— alleging discrimination in violation of Title VII and 42 U.S.C. § 1981—made them inappropriate for resolution through arbitration. This court disagrees.

■ The Supreme Court has made plain that the "duty to enforce arbitration agreements is not diminished" simply because the claims at issue are "founded on statutory rights." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). This is because a party that agrees to arbitration does not thereby "forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judi-

cial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. at 628, 105 S.Ct. at 3354. Arbitral forums are recognized as "readily capable" of resolving disputes based even on complex federal statutes. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. at 232, 107 S.Ct. at 2340. Thus, even in the case of statutory claims, if a party has agreed to arbitrate, it will be held to its agreement unless it can show that Congress specifically intended "to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* This burden can be met by reference to the text of the statute, its legislative history, or by demonstration of an "inherent conflict between arbitration and the statute's underlying purposes." *Id.* at 227, 107 S.Ct. at 2338.

The application of these principles to statutes that prohibit employment discrimination was made plain by the Supreme Court in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647. In that case, plaintiff claimed that defendant terminated his employment at age 62 in violation of the Age Discrimination in Employment Act ("ADEA"). Gilmer had previously signed a U–4 form—the same form signed by Pitter here—to register as a securities representative with the New York Stock Exchange. Rule 347 of the NYSE required arbitration of "any controversy ... arising out of the employment or termination of employment" of a registered representative. *Id.* at 23, 111 S.Ct. at 1650. The Supreme Court held that Gilmer was bound by his U–4 agreement to abide by Rule 347 and thus, that his lawsuit should be stayed pending arbitration. The Court found nothing in the text or history of the ADEA to preclude arbitration. Similarly, it found no inconsistency between the important social policy goals of the statute and the use of an arbitral forum. *Id.* at 26–34, 111 S.Ct. at 1652–57.

---

6. Rule 347 of the New York Stock Exchange ("NYSE") is, in fact, more precise than the pre-amendment version of the NASD Code in covering employment disputes. It provides for arbitration of "[a]ny controversy between a registered representative and any member or member organization arising out of the employment or

termination of employment of such registered representative." But that does not detract from Judge, now Justice, Ginsburg's observation in *Association of Inv. Brokers* that *both* organizations have always required arbitration of employer-employee disputes.

That same term, the Supreme Court remanded *Dean Witter Reynolds, Inc. v. Alford,* 500 U.S. 930, 111 S.Ct. 2050, 114 L.Ed.2d 456 (1991), a Title VII case, to the Fifth Circuit for further consideration in light of *Gilmer.* Alford, a stockbroker with Dean Witter, had sued her employer for gender discrimination. On remand, the Fifth Circuit held that "the ADEA and Title VII are similar civil rights statutes," both of which were subject to arbitration under federal law. *Alford v. Dean Witter Reynolds, Inc.,* 939 F.2d 229, 229 (5th Cir.1991).

Although the Second Circuit has not ruled on the question of whether civil rights claims under Title VII are subject to arbitration, virtually every other circuit court to consider the issue has reached the same result as the Fifth Circuit in *Alford. Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d at 1487 (10th Cir.1994); *Bender v. A.G. Edwards,* 971 F.2d 698, 699 (11th Cir.1992); *Mago v. Shearson Lehman Hutton, Inc.,* 956 F.2d 932, 935 (9th Cir.1992); *Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305, 307 (6th Cir.1991). The district courts in this circuit are similarly unanimous in holding that Title VII claims are arbitrable. *Maye v. Smith Barney, Inc.,* 897 F.Supp. 100, 109 (S.D.N.Y. 1995), *leave to appeal denied, Kelsey Maye v. Smith Barney, Inc.,* No. 95 Civ. 1878, 903 F.Supp. 570 (S.D.N.Y.1995); *Gateson v. ASLK–Bank, N.V.,* No. 94 Civ. 5849, 1995 WL 387720, at *2 (S.D.N.Y. June 29, 1995); *Hall v. MetLife Resources,* 1995 WL 258061, at *3; *Moore v. Interacciones Global, Inc.,* 1995 WL 33650, at *2; *DiCrisci v. Lyndon Guar. Bank of New York,* 807 F.Supp. 947, 952 (W.D.N.Y.1992); *Scott v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 89 Civ. 3749, 1992 WL 245506, at *7 (S.D.N.Y. Sept. 14, 1992).

Indeed, any doubt as to Congress's willingness to allow arbitration to address statutory discrimination claims was put to rest by § 118 of the Civil Rights Act of 1991, which states: "Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution including ... arbitration, is encouraged...." Civil Rights Act of 1991, Pub.L. No. 102–166, § 118, 1991 U.S.Code Cong. & Admin.News (105 Stat.) 1071, 1081 (codified at 42 U.S.C.1981 note (1994) (Alternative Means of Dispute Resolution)).

There is only one case—not cited by plaintiff—that lends any support to his argument that he should not be ordered to arbitrate his Title VII and § 1981 claims: *Prudential Ins. Co. v. Lai,* 42 F.3d 1299. Therein, the Ninth Circuit held that "a Title VII plaintiff may only be forced to forego her statutory remedies and arbitrate her claims if she has knowingly agreed to submit such disputes to arbitration." *Id.* at 1305. The *Lai* plaintiffs alleged that they had been misled into thinking that the U–4 forms they signed to register with the NASD were only test applications. Thus, they argued, they had never entered into a knowing agreement to arbitrate. *Id.* at 1301. The Ninth Circuit agreed, but its broad ruling went beyond the discrete facts of the case. The court held that plaintiffs had not knowingly waived a judicial forum for their Title VII claims since (1) the U–4 forms—even if they had been understood by the signatories—did not specify the precise types of disputes subject to arbitration, and (2) the pre-amendment NASD Code—even if it had been read by the registering parties—did not apply to employment disputes. *Id.* (citing *Farrand* ).

This court has already explained why it rejects *Farrand*'s interpretation of the pre-amendment Code. But implicit in *Lai*'s conclusions is a suggestion that goes beyond *Farrand*: that federal law favoring arbitration and requiring liberal construction of arbitration agreements is not applicable to statutory claims of discrimination. This is unsupported by any legal authority and, indeed, at odds with the Supreme Court's decision in *Gilmer v. Interstate/Johnson Lane Corp..* In *Gilmer,* plaintiff had signed a broad U–4 application, and it was that document that was held to be the contract binding him to arbitrate his ADEA claim. 500 U.S. at 25 n. 2, 111 S.Ct. at 1651 n. 2 ("the arbitration clause at issue is in Gilmer's securities registration application, which is a contract with the securities exchanges...."). Thus, the fact that a U–4 form does not specifically identify employment claims—or any other types of claims—as among those to be arbi-

trated does not mean that a registrant has failed knowingly to enter into an arbitration agreement. Indeed, the lack of specificity only highlights the breadth of the agreement: to arbitrate "*any* dispute, claim or controversy that may arise between me and my firm ... that is required to be arbitrated under the rules ... of the organizations with which I register...." (emphasis added).

To support its holding, *Lai* points to a statement in a report by the House Education and Labor Committee made in connection with the Civil Rights Act of 1991. Therein, the Committee noted

> that the use of alternative dispute resolution mechanisms is intended to supplement, not supplant, the remedies provided by Title VII. Thus, for example, the Committee believes that any agreement to submit disputed issues to arbitration, whether in the context of a collective bargaining agreement or in an employment contract, does not preclude the affected person from seeking relief under the enforcement provisions of Title VII.... The Committee does not intend for the inclusion of [§ 118] to be used to preclude rights and remedies that would otherwise be available.

H.R.Rep. No. 40(I), 102nd Cong. 1st Sess., *reprinted in* 1991 U.S.Code Cong. & Admin.News 549, 635.

In fact, the excerpt speaks not at all to what terms will or will not qualify as an agreement to arbitrate. It only expresses a concern that Congress's encouragement of arbitration not be understood to "supplant," but only to "supplement," otherwise available statutory remedies.[7]

The excerpt may raise a question posed by this court to the parties: what level of judicial review is appropriate after a Title VII claim has been arbitrated? This issue, however, need not be resolved at this time. Indeed, it will be ripe for consideration only if either side seeks review of the arbitral decision.

The single issue before this court is whether these proceedings should be stayed while arbitration of plaintiff's claim is pursued. Because this court finds that Pitter did enter into a broad arbitration agreement, because it finds the scope of that agreement—whether governed by the NASD Code before or after its amendment in 1993—to include employment disputes, and because there is no reason to think that Congress intended statutory discrimination claims not to be arbitrated, the court hereby grants the stay as requested by defendant.

### Conclusion

Plaintiff having agreed to arbitrate any dispute arising between himself and Prudential in conformity with the rules of the NASD, and those rules requiring arbitration of employment disputes, this court hereby stays these proceedings while the parties pursue arbitration.

*SO ORDERED.*

---

**7.** Any particular concern the Committee may have had about arbitration clauses in collective bargaining agreements, *see Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. at 33–35, 111 S.Ct. at 1655–57 (recognizing tension between protection of collective and individual rights under collective bargaining agreements), or employment contracts, *see* 9 U.S.C. § 1 (excluding employment agreements from FAA), is not implicated in this case where the agreement to arbitrate derives from the U–4 form.