Robert E. BATTLE, Plaintiff,

v.

The **PRUDENTIAL INSURANCE COMPANY OF AMERICA**, d/b/a Prudential Insurance and Financial Services, Harry E. Axford, Steve T. Kattke, Michael F. Schuster, Winter and Associates, Inc. and Minnesota Mutual Life Insurance Co., Defendants.

No. 3–96–870.

United States District Court,
D. Minnesota,
Third Division.

Aug. 4, 1997.

Steven W. Cooper, Stacey R. Everson, Minneapolis, MN, for plaintiff.

Melissa Raphan, Minneapolis, MN, for Prudential Ins.Co. of America.

Michael B. Chase, St. Paul, MN, for defendants Harry E. Axford, Steve T. Kattke and Michael F. Schuster.

Susan D. Hall, Cosgrove, Flynn & Gaskins, Minneapolis, MN, for defendant Winter and Associates, Inc.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

*Facts*

Plaintiff Robert Battle was employed by The Prudential Insurance Company of America ("Prudential") from May 1980 to September 1994. On December 7, 1984, Plaintiff executed a National Association of Securities Dealers ("NASD") Uniform Application for Securities Industry Registration or Transfer Form U–4 ("U–4") in connection with his employment at Prudential. Thereafter, Plaintiff was a NASD registered representative of the Prudential and PRUCO Securities Corporation.

The U–4 form signed by Plaintiff provides, *inter alia:*

2. I hereby apply for registration with [NASD] ... I submit myself to the jurisdiction of [NASD] ... and hereby certify that I have read, understand and agree to abide by, comply with, and adhere to all the provisions ... of the ... rules and regulations of [NASD] ... as they are and may be adopted, changed, or amended from time to time ...;

5. I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of [NASD] ...

At the time Plaintiff signed the U–4, the NASD's Code of Arbitration Procedure,

Part One, Section One made eligible for arbitration:

any dispute, claim or controversy arising out of or in connection with the business of any member of the Association with the exception of disputes involving the insurance business of any member which is also an insurance company: (1) between or among members; (2) between or among members and public customers or others ...

Part Two, Section Eight (a), Required Submission, provided:

Any dispute, claim or controversy eligible for submission under Part I of this Code between or among members and/or associated persons, and/or certain others arising in connection with the business of such member(s) or in connection with the activities of such associated person(s) shall be arbitrated under this Code, at the instance of: (1) a member against another member; (2) a member against a person associated

with a member or a person associated with a member against a member; and (3) a person associated with a member against a person associated with a member.

In October 1993, the NASD Code of Arbitration Procedure was amended. Part One, Section One now provides that matters eligible for arbitration include "any dispute, claim or controversy arising out of or in connection with the business of any member of the Association, *or arising out of the employment or termination of employment of associated person(s) with any member,* with the exception of disputes involving the insurance business of any member which is also in insurance company." (added language underlined). Part Two, Section Eight was similarly amended to include disputes, claims or controversies "arising out of the employment or termination of employment of such associated person(s) with such member . . ."

On September 2, 1994, Plaintiff was terminated from his position at Prudential. Subsequently, Plaintiff filed this action alleging he was discriminated against on the basis of age and race. Plaintiff also asserts a number of state law claims, all of which arise out of his employment with Prudential.

*Motion for Default Judgment*

Plaintiff served his Complaint upon Defendants on August 8, 1996 and filed it with the District Court for the County of Hennepin on or about September 3, 1996. On August 23, 1996, Defendant Prudential requested an extension to answer. Plaintiff granted a twenty-five (25) day extension to Prudential to file its answer. The action was removed to this Court on September 6, 1996. On the last day to timely file its answer, September 23, 1996, Prudential and the individual defendants filed a motion for an extension of time to file its answer until twenty (20) days following the disposition of Prudential's motion to compel arbitration. In its motion for an extension of time to answer, Prudential stated it expected to file the motion to compel on October 17, 1996.

Plaintiff has moved the Court for an Order for the entry of default judgment against Prudential and the individual defendants, because they did not timely answer Plaintiff's Complaint.

■ Default judgments are not favored by the law. *U.S. on Behalf of Time Equip. Rental v. Harre,* 983 F.2d 128, 130 (8th Cir. 1993). The courts are given discretion to refuse to enter default judgment, and entry of judgment by default is a drastic remedy which should only be used in extreme situations, such as where there is a clear record of delay or contumacious conduct. *Wendt v. Pratt,* 154 F.R.D. 229, 230 (D.Minn.1994) (citations omitted).

> The entry of a default judgment for a marginal failure to comply with the time requirements—in this case, being twelve days late—should be distinguished from dismissal or other sanctions imposed for willful violations of court rules, contumacious conduct, or intentional delays.

*Harre,* 983 F.2d at 130. In this case, the record does not establish delay or contumacious conduct that would warrant default judgment. Prudential acted immediately to defend the action and notified Plaintiff within the time to answer that it would be moving to compel arbitration. Under these circumstances, entry of default judgment would not serve the interests of justice.[1] Accordingly, Plaintiff's motion for default judgment is denied.

*Motion to Compel Arbitration*

Prudential, Axford, Kattke and Schuster (hereinafter the "Prudential Defendants") have moved this Court for an order staying this action and compelling Plaintiff's claims against them to be submitted to arbitration. The Prudential Defendants argue that by signing the U–4, Plaintiff agreed to submit his claims to arbitration. The Prudential Defendants assert that the express terms of the U–4, and the Federal Arbitration Act ("FAA") support its position. The Prudential Defendants also assert that many courts, including the United States Supreme Court

---

1. Other jurisdictions have held that where a responsive pleading is filed prior to the filing of the motion for default judgment, the default is cured and entry of judgment is inappropriate. *Hudson v. North Carolina,* 158 F.R.D. 78 (E.D.N.C.1994).

and the Minnesota Supreme Court, have held arbitration of employment claims, including discrimination claims, is proper. *See Gilmer v. Interstate/Johnson Lane Corporation,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Johnson v. Piper Jaffray, Inc.,* 530 N.W.2d 790 (Minn.1995).

Plaintiff responds that there is no valid agreement to arbitrate his claims because he did not knowingly or voluntarily agree to arbitrate his claims, and because the NASD Code of Arbitration Procedure was not amended until October 1993 to include employment claims. Plaintiff first asserts that when he signed the U–4, he was not given the opportunity to read the form. He also states that he was never given the NASD manual that provides what disputes would be subject to the arbitration clause in the U–4. Relying on the Ninth Circuit decision *Prudential Insurance Company of America v. Lai,* 42 F.3d 1299 (9th Cir.1994) *cert. denied,* — U.S. ——, 116 S.Ct. 61, 133 L.Ed.2d 24 (1995), Plaintiff argues that he cannot be compelled to arbitrate his Title VII and ADEA claims without knowingly agreeing to do so. Plaintiff also argues that prior to the relevant amendment to the NASD Code of Arbitration Procedure, employment claims did not need to be arbitrated, relying on *Farrand v. Lutheran Brotherhood,* 993 F.2d 1253 (7th Cir.1993).

Plaintiff also asserts that the NASD Arbitration Procedures are inadequate to fairly address Plaintiff's claims, and that public policy disfavors agreements to arbitrate employment discrimination claims. Finally, Plaintiff argues the Prudential Defendants' motion to compel arbitration must be denied because his claims involve the insurance business, which is specifically excluded from the arbitration agreement.

*Analysis*

Section 2 of the FAA provides:

A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable ...

Section 3 of the FAA provides that a federal court may stay proceedings before it, if it finds such proceedings involve issues referable to arbitration. Section 4 provides a federal court power to compel arbitration. "These provisions manifest a 'liberal federal policy' favoring arbitration agreements." *Gilmer,* 500 U.S. at 25, 111 S.Ct. at 1651 (*citing, Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

Before compelling a party to arbitrate a dispute, the court must first find that a valid arbitration agreement exists, and that the specific dispute falls within the substantive scope of that agreement. *AT & T Technologies, Inc. v. Workers of America,* 475 U.S. 643, 648–649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986).

A. Knowing waiver

Plaintiff first argues that the motion to compel arbitration must be denied because there is no valid agreement to arbitrate. Plaintiff's initial argument in opposition to the motion to compel is that employment discrimination claims brought under Title VII are not subject to arbitration unless there has been a knowing waiver of the right to pursue such claims in a judicial forum. Plaintiff asserts that in this case, he did not knowingly enter into an agreement to arbitrate employment discrimination claims, therefore he did not waive his right to a judicial forum for such claims. As noted above, Plaintiff relies on the Ninth Circuit's decision in *Lai, supra* in support of his position.

In *Lai,* the Ninth Circuit reviewed an arbitration agreement contained in U–4 forms signed in 1989, the language of which is identical to the arbitration agreement at issue in this case. In *Lai,* two female employees of Prudential brought suit against Prudential and their immediate supervisor asserting state law claims of sex discrimination. Prudential moved to stay the action and compel arbitration based upon the arbitration agreement in the U–4's signed by

the plaintiffs. The district court granted the motion to compel arbitration.

On appeal, the Ninth Circuit held that the statutory language of Title VII and its legislative history evince a congressional intent that Title VII disputes be arbitrated only where appropriate and where the agreement to arbitrate such claims was knowingly made. *Lai*, 42 F.3d at 1305. The court held there was no valid agreement to arbitrate the plaintiffs' discrimination claims, because there was no knowing waiver of the right to litigate their claims in a judicial forum because they were not given time to read the U–4 before signing, and because the U–4 itself did not describe the types of disputes to be arbitrated. *Id.*

The Prudential Defendants urge this Court to reject the *Lai* decision, as it is not supported by any legal authority, and is in fact contrary to the law relevant to this issue.

Statutory claims may be the subject of arbitration agreements. *Gilmer*, 500 U.S. at 26, 111 S.Ct. at 1652. "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits their resolution in an arbitral, rather than a judicial, forum." *Id.* (quoting, *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth. Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354–3355, 87 L.Ed.2d 444 (1985)). A statutory claim should not be submitted to arbitration where Congress "has evinced an intention to preclude waiver of judicial remedies for the statutory rights at issue." *Id.* The burden is on the nonmoving party to show such Congressional intent. *Id.* "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrarily." *Moses H. Cone*, 460 U.S. at 25, 103 S.Ct. at 941.

In *Gilmer*, the plaintiff had previously signed a U–4 form, substantially similar to the one at issue here, to register as a securities representative with the New York Stock Exchange. Rule 347 of the NYSE required arbitration of "any controversy ... arising out of the employment or termination of employment." *Id.*, at 23, 111 S.Ct. at 1650–1651. Plaintiff brought suit in federal court, asserting various employment related claims. The employer moved to stay the federal action and compel arbitration pursuant to the agreement to arbitrate contained in the U–4. The district court denied the motion, and the employer appealed. The United States Supreme Court held that the plaintiff was bound by the agreement to arbitrate, and thus stayed the federal action pending the outcome of arbitration. In reaching this conclusion, the Court specifically rejected the argument that compulsory arbitration of ADEA claims was inconsistent with the statutory framework and purposes of ADEA, to address grievances involving age discrimination and to promote important social policies. *Id.*, at 27, 111 S.Ct. at 1652–1653.[2]

Although *Gilmer* only addressed the statutory framework and purposes of the ADEA, it impliedly extended *Gilmer* to other discrimination statutes. Shortly after the *Gilmer* decision was filed, the Supreme Court vacated and remanded the Fifth Circuit decision in *Alford v. Dean Witter Reynolds, Inc.*, 905 F.2d 104 (5th Cir.1990) (*Alford I* ). In *Alford I*, the court had refused to compel a plaintiff to submit her Title VII claims to arbitration, relying on an earlier Supreme Court decision in *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). In *Gilmer*, the plaintiff also relied on the *Gardner–Denver* decision in his attempt to preclude arbitration of his employment discrimination claims. The Court in *Gilmer* rejected this argument, finding *Gardner–Denver* was limited to the collective bargaining context. In light of its decision in *Gilmer*, the Supreme Court remanded *Alford I*, with instructions to reconsider in accordance with *Gilmer*. 500 U.S. 930, 111 S.Ct. 2050, 114 L.Ed.2d 456 (1991). On remand, the Fifth Circuit held that Title VII claims are subject to compulsory arbitration under the FAA, given the fact that the ADEA and Title VII are similar civil rights

**2.** Although the plaintiff in *Gilmer* did not argue that the legislative history or text of the ADEA precludes arbitration, the Court in *Gilmer* none-

theless establishes ADEA does not preclude arbitration.

statutes and both are enforced by the EEOC. *Alford v. Dean Witter Reynolds, Inc.,* 939 F.2d 229, 230 (5th Cir.1991). Other circuits have similarly held that Title VII claims are subject to compulsory arbitration under the FAA. *See e.g., Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482 (10th Cir.1994); *Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698 (11th Cir.1992); *Mago v. Shearson Lehman Hutton, Inc.,* 956 F.2d 932 (9th Cir.1992); *Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305 (6th Cir.1991). The Minnesota Supreme Court has similarly held that state sex discrimination claims may be subject to compulsory arbitration. *See, Johnson v. Piper Jaffray, Inc.,* 530 N.W.2d 790 (Minn.1995).

Despite the Court's decisions in *Gilmer* and *Alford,* the Ninth Circuit nonetheless interpreted the legislative history and text of Title VII as disfavoring arbitration. In coming to this conclusion, however, the court ignored the clear federal policy favoring arbitration as well as the clear statutory language encouraging arbitration of Title VII claims. Other courts have criticized *Lai* as well.

For example, in *Hubbard Broadcasting, Inc.,* the plaintiff relied on the decision in *Lai* to invalidate an agreement to arbitrate because she did not knowingly or voluntarily agree to arbitrate her claims. The court declined to adopt the reasoning in *Lai* noting it has been met with widespread criticism, the arbitration agreements were different and because a party retains their substantive rights when it agrees to arbitrate a dispute. *Hubbard Broadcasting,* 940 F.Supp. at 1455.

The *Lai* decision was also criticized in *Pitter v. Prudential Life Insurance Company of America,* 906 F.Supp. 130 (E.D.N.Y. 1995). In *Pitter,* the court noted that the decision in *Lai* which suggests that the federal law favoring arbitration and requiring liberal construction of arbitration agreements is not applicable to statutory claims of discrimination, is unsupported by any legal authority and, is at odds with the United States Supreme Court's decision in *Gilmer, supra. Pitter,* 906 F.Supp. at 139.

In *Gilmer,* plaintiff had signed a broad U–4 application, and it was that document that was held to be the contract binding him to arbitrate his ADEA claim.... Thus, the fact that a U–4 form does not specifically identify employment claims— or any other types of claims-as among those to be arbitrated does not mean that a registrant has failed knowingly to enter into an arbitration agreement. Indeed, the lack of specificity highlights the breadth of the agreement: to arbitrate "any dispute, claim or controversy that may arise between me and my firm ... that is required to be arbitrated under the rules ... of the organizations with which I register ..."

*Id.* The court also noted that any doubt that may continue to exist regarding Congress' willingness to allow arbitration of Title VII claims was put to rest by § 118 of the Civil Rights Act of 1991: "Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution including arbitration, is encouraged." *Pitter,* at 130 (citation omitted.)

This Court is similarly not persuaded that the court's analysis in *Lai* is sound and supported by law and declines to following its reasoning as well.[3]

Not only is the law clear that employment discrimination claims are properly subjected to arbitration, it is also clear that agreements to arbitrate employment discrimination claims will be upheld and enforced "save upon such grounds as exist at law or in equity for the revocation of any contract." *Gilmer,* 500 U.S. at 33, 111 S.Ct. at 1656 (*citing* Section 2 of the FAA). In *Gilmer,* the plaintiff argued that arbitration agree-

---

**3.** In support of his argument that Title VII claims should not be subjected to compulsory arbitration, Plaintiff cites the Court to *Swenson v. Management Recruiters International, Inc.,* 858 F.2d 1304, 1309 (8th Cir.1988), in which the Eighth Circuit stated Congress intended, through the text and legislative history of Title VII, to preclude waiver of judicial remedies. The court relied on the Supreme Court's decision in *Alexander v. Gardner–Denver Co., supra* in reaching its decision. As discussed above, *Gardner–Denver* was limited to the collective bargaining context in *Gilmer.* Accordingly, the decision in *Swenson* should similarly be limited to the collective bargaining context. *See Johnson v. Piper Jaffray, Inc.,* 530 N.W.2d at 801.

ments may be the product of unequal bargaining power between employers and employees, thus employment disputes should not be subjected to arbitration. *Id.* The Court rejected this argument, finding "[t]here is no indication in this case, however, that Gilmer, an experienced businessman, was coerced or defrauded into agreeing to the arbitration clause in his registration application." *Id.*[4]

■ In *Hubbard Broadcasting,* the court also rejected the argument that an agreement to arbitrate should be invalidated when the employee did not knowingly or voluntarily agree to arbitrate her dispute. 940 F.Supp. at 1454.

> The Court finds this line of reasoning unpersuasive. By her own admission, Johnson is an intelligent woman with experience in the field of broadcast journalism. According to her Complaint, she graduated with honors from Howard University ... Furthermore, before joining HBI, she served as an intern at various radio and television stations within the industry ... Despite this intelligence and experience, Johnson signed the Agreement without reading it. While Johnson may now regret her decision, the Court cannot ignore it.

*Id.* The court could not ignore it because when determining whether the parties agreed to arbitrate a particular dispute, courts must apply ordinary state law principles that govern the formation of contracts. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995). In Minnesota, in the absence of fraud, mistake, duress, coercion or unconscionable terms, a literate party who signs a contract in ignorance of its contents is bound by its terms and conditions. *Johnson v. Hubbard Broadcasting,* at 1454 *(citing, Gartner v. Eikill,* 319 N.W.2d 397, 398 (Minn.1982); *N&D Fashions, Inc. v. DHJ Industries, Inc.,* 548 F.2d 722, 727 (8th Cir. 1976)). "A party therefore signs a contract at its own peril. Failing to read or under-

stand the language of a contract serves as no defense under the law." *Id.*

■ The Court finds that Plaintiff has failed to establish the existence of grounds, such as fraud, duress or coercion, upon which to revoke the agreement to arbitrate. In his Complaint, Plaintiff describes himself as a top salesperson throughout his career at Prudential, who received numerous awards and recognition. Complaint ¶¶ 10 and 11. The Court is not persuaded that a successful salesman is defrauded, coerced or under duress to sign a contract, because "[t]he person handing [him] the form, in a hurried manner, made an 'X' on the signature line, and said 'sign here.'" Plaintiff's Memorandum in Opposition to Defendant's Motion to Compel Arbitration, p. 2. Plaintiff admittedly signed the U–4, and must now be held to its terms. Accordingly, the Court finds that a valid agreement to arbitrate exists.

**B. Scope of Arbitration Agreement**

■ The next issue to be addressed is the scope of the arbitration agreement. Plaintiff argues that NASD did not require the arbitration of employment disputes until October 1993, when the NASD Code of Arbitration Procedure was amended to specifically cover employment disputes. Because he signed the U–4 form in 1984, he is not bound by the amended version of the NASD Code.

The Prudential Defendants respond that Plaintiff expressly agreed to "abide by, comply with, and adhere to all the provisions of the ... rules and regulations of the [NASD] as they are and may be adopted, changed or amended from time to time." Identical language has been interpreted by many courts to hold an employee bound by the agreement to arbitrate employment disputes, even though the U–4's were signed prior to the October 1993 amendment to the NASD Code. For example, in *Wojcik v. Aetna Life Insurance and Annuity Company,* 901 F.Supp. 1282, 1288–1289 (N.D.Ill.1995), the court held that by agreeing to "abide by, comply with and adhere" to NASD's rules and regu-

---

4. The Court also rejected arguments that arbitration procedures are inadequate to address ADEA claims. *Gilmer,* 500 U.S. at 30–31, 111 S.Ct. at 1654–1655. For the reasons stated therein, the Court will reject Plaintiff's assertions that arbitration procedures are inadequate to address his Title VII claims.

lations, an employee was bound by the October 1993 amendment which specifically included employment disputes.

> The 1993 Amendments to the NASD Code deal, after all, only with the forum where employment claims will be heard. They do not alter the substantive rights conferred by Congress on employees.

*Pitter*, 906 F.Supp. at 134. Changes in procedural rules may often be applied in suits arising before their enactment without raising retroactivity concerns. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 275, 114 S.Ct. 1483, 1502, 128 L.Ed.2d 229 (1994). Because Plaintiff filed suit after the effective date of the amendment, the amendment governs the instant motion to compel arbitration. *Id.; Pitter, supra* at 134. *See also, Scher v. Equitable Life Assurance Soc'y of the United States*, 866 F.Supp. 776, 778 (S.D.N.Y.1994); *Johnson v. Piper Jaffray, Inc.*, 530 N.W.2d at 796–798.

The court in *Wojcik* also rejected the argument that the provision which provides the employee agrees to "abide by, comply with, and adhere to all the provisions of the ... rules and regulations of the [NASD] as they are and may be adopted, changed or amended from time to time", found in paragraph 2 of the U–4, does not apply to the agreement to arbitrate found in paragraph 5. The court noted that such argument "violates the cardinal rule of construction: that a document should be read to give effect to all of its provisions and to render them consistent with each other." *Wojcik*, at 1290.

> "Wojcik's interpretation does not give full effect to the compliance clause, which does not expressly or implicitly except any type of rule from coverage, creates an inconsistency in the agreement between paragraphs 2 and 5, and renders paragraph 2, in which Wojcik agrees to abide by and comply with all rules as they are and may be amended, meaningless." *Id.* at 1291.

The Court is not persuaded by Plaintiff's argument that the NASD Code did not require the arbitration of employment disputes prior to the October 1993 amendment. As many courts have pointed out, NASD has required the arbitration of employment disputes prior to the amendment. *See, Assoc.*

*of Inv. Brokers v. Securities*, 676 F.2d 857, 860 (D.C.Cir.1982); *Pitter*, 906 F.Supp. at 134–138; *Wojcik*, 901 F.Supp. at 1286–1288; *Johnson v. Piper Jaffray, Inc.*, 530 N.W.2d at 796–798. This view is consistent with the view held by NASD. When explaining the need for the October 1993 amendment, NASD stated the amendment was needed to clarify its long-held understanding that employment disputes are arbitrable under Section 8. 58 Fed.Reg. 39,071 (1993). Even prior to 1993, there is evidence that NASD viewed its Code of Arbitration Procedures to encompass employments disputes. *Pitter*, 906 F.Supp. at 137–138.

The case cited by Plaintiff to support his position that NASD did not require arbitration of employment disputes prior to the October 1993 amendment, *Farrand v. Lutheran Brotherhood*, 993 F.2d 1253 (7th Cir. 1993), has been widely criticized. *See e.g., Kidd*, 32 F.3d at 519; *Pitter*, 906 F.Supp. at 135–137; *Johnson v. Piper Jaffray, Inc.*, 530 N.W.2d at 797–798. Because the Court finds agrees that NASD did require arbitration of employment disputes prior to the October 1993 amendments, the Court will decline to adopt *Farrand* as well.

## C. Insurance Exception

 Plaintiff argues that his employment claims are not subject to compulsory arbitration, because his claims fall within the insurance exception contained in Part One, Section One of the NASD Code of Arbitration Procedures. Section One excludes from arbitration all "disputes involving the insurance business of any member which is also an insurance company." Plaintiff does not cite to any case supporting this argument. The Prudential Defendants, however, have pointed to many cases in which this argument was raised and rejected by the courts. For example, in *Pitter*, the court held that the insurance exception may not be triggered merely because the employer is an insurance company. 906 F.Supp. at 1291 (citations omitted). To trigger the insurance exception, the plaintiff must allege unlawful insurance practices, and not wrongful conduct directed at the plaintiff. *Id.* Thus, the question is whether the claims arose out of

the plaintiff's employment and termination, or whether this is a dispute over the employer's insurance business. *Trumbetta v. Metropolitan Life Ins. Co.*, 1994 WL 481152 (E.D.Pa.1994). Clearly, the claims asserted by Plaintiff arise out of his employment with Prudential-how he was treated by his employers. That the facts underlying the Plaintiff's claims may involve allegations of insurance practices, does not bring Plaintiff's claims within the insurance exception. *Armijo v. The Prudential Insurance Co. of America*, 72 F.3d 793, 800 (10th Cir.1995).

### D. Public Policy

■ Finally, Plaintiff argues public policy dictates that he should not be subjected to compulsory arbitration of his employment claims, because employment contracts are not covered by the FAA. In *Gilmer*, the Court noted that the arbitration agreement was not contained in an employment contract, rather it was contained in a registration as a securities representative. *Gilmer*, 500 U.S. at 25 n. 2, 111 S.Ct. at 1651 n. 2. Because the issue of the applicability of the FAA was not raised, the Court applied the FAA. Justice Stevens and Marshall, dissenting, were of the opinion that the FAA should not be applied to any employment disputes, no matter where arbitration agreements are located. *Id.*, at 39–43, 111 S.Ct. at 1659–1661. Plaintiff urges the Court to follow the dissent in *Gilmer* and find that no employment dispute should ever be subjected to compulsory arbitration. Given the Court's decision in *Gilmer* and the weight of cases upholding agreements to arbitrate contained in U–4 forms, even disputes involving employment claims, the Court will decline to adopt the public policy argument to invalidate the arbitration agreement.

### Motion to Dismiss by Defendant Winter and Associates, Inc.

Plaintiff worked as an independent contractor at Winter and Associates, Inc. ("Winter") from October 17, 1994 to August 17, 1995. In his complaint, two claims are asserted against Winter: Intentional Infliction of Emotional Distress and Intentional Interference with an Economic Advantage. Winter asserts that there are no factual allegations in the Complaint that support the claims against it. Rather the claims are conclusory. As an example, Paragraph 56 provides:

Defendants Prudential, Harry E. Axford, Steve T. Kattke, Michael F. Schuster, Winter and Associates, Inc. and Minnesota Mutual Life Insurance Company violated that duty by their intimidation, threats and abusive conduct in reckless disregard of plaintiff's business.

Because the Complaint contains no factual assertions which would satisfy the elements of the claims against Winter, Winter moves to dismiss for failure to state a claim. In the alternative, Winter moves for a more definite statement under Rule 12(e).

Plaintiff responds that after he was terminated by Prudential, he obtained a job at Winter and its compliance agency Minnesota Mutual Life Insurance Company. Winter and Minnesota Mutual, unilaterally or in consent with or at the direction of Prudential, did not accept transfer of Plaintiff's series 6 license (license required to sell securities-based products). They also refused to let him perform in the position for which he was hired. Plaintiff argues that as his termination from Prudential dealt with the insurance side, and had nothing to do with securities, there was no reason not to accept the transfer. As a result, Plaintiff lost old and new clients.

Winter responds that it is entitled to dismissal because the complaint contains no factual allegations to support the claim. The assertion in his opposition papers that Winter refused to accept transfer of his series 6 license is not sufficient. As stated in the complaint, Plaintiff has asserted a defamation action against Prudential for the filing of a U–5 form, which puts the industry on notice of the allegations made against Plaintiff regarding mismanagement. Winter argues that Plaintiff's license could not be transferred due to the filing of the U–5 form.

The Court finds that dismissal under Rule 12(b)(6) may be premature. The Court finds, however, that a more definite statement is required. The allegations raised by Plaintiff in opposition to Winter's motion to dismiss

are nowhere found in the Complaint. However, because these proceedings will be stayed pending arbitration, the motion for a more definite statement will be dismissed without prejudice.

IT IS HEREBY ORDERED that:

1. The Prudential Defendants' Motion For Extension of Time to Respond to Plaintiff's Complaint is GRANTED.

2. The Prudential Defendants' Motion to Stay Proceedings and Compel Arbitration is GRANTED.

3. The Plaintiff's Motion for Default Judgment is DENIED.

4. The Motion of Winter and Associates, Inc. to Dismiss Pursuant to Rule 12(b)(6) and 12(e) is DENIED without prejudice.